Matter of the Judicial Settlement of the Accounts of BOYD McDOWELL, CASPER G. DECKER and JERVIS LANGDON, as Executors of the Last Will and Testament of ROBERT M. McDOWELL, Deceased.

(Surrogate's Court, Chemung County, October, 1916.)

Wills — devise of rest, residue and remainder — executors and adminis-trators — when duties of executors cease and duties of trustees commence.

Accounting — by executors — filing of account — commissions of execu-tors — wills — negotiable instruments.

Under a will which, after dealing with acts to be performed by the executors only, gives the rest, residue and remainder of the estate to them as trustees for certain purposes and the

will contemplates a time when the duties of the executors shall cease and their duties as trustees shall commence, the duties of the executors and the duties of the trustees are distinct.

While an accounting by executors and a transfer of trust funds to themselves as testamentary trustees pursuant to a decree of a court of competent jurisdiction is the most satisfactory proof of the completion of their duties in the one capacity and the commencement of their duties in the other capacity, yet such judicial decree is not the only means of proving that the transfer has actually been made; there must, however, be convincing proof that the trust funds have been actually separated and set apart; that the same have been actually received by the trustees, as such, acting jointly, and that they have actually entered upon the discharge of their duties.

On the same day that one of three executors filed his account setting forth all transactions had by him with reference to the estate both, as he claimed, as executor and trustee, each of his co-executors, who had qualified as such, filed separate verified statements declaring in substance that upon the issuance of letters testamentary an inventory of the personal estate was filed and that the accounting executor took possession of decedent's personal property, including bank deposits, cash, securities, books of account, etc., together with the keys to the safety deposit box; that from then on said executor had had sole access thereto; that all checks drawn on funds deposited to the credit of the estate were drawn by him as executor, and they, the co-executors, denied any connection with the management of the estate except that they each, one or the other, countersigned all the checks. The only bank account opened by the executors, either for the deposit of principal or income, was in the name of the estate of their testator, and no bank account of any kind was opened by the trustees. The only book kept by the executors, either as such or as trustees, was a book kept in the office of the accounting executor in which were entered from time to time items of income received from securities. In every instance where securities were purchased with funds of the estate the purchases were made by the accounting executor alone. Held, upon a consideration of the proofs and evidence, that the executors and each of them had acted in one capacity, that of executors only, and that all of the funds of the estate remained in their hands

and that they were still acting and accountable in their capacity as executors.

By the devise of the rest, residue and remainder of the estate the trustees took as joint tenants and any act in relation thereto must be their joint act, and until the rest, residue and remainder has been determined and turned over to the trustees as such they do not acquire title thereto; until there is an actual separation and setting apart of the trust funds the question whether the trustees are acting solely as such can never be determined with certainty, or until the trust funds have been separated there is nothing for the trustees to act on, and until they have received said funds they cannot act as trustees.

Executors have the right to retain in their hands sufficient funds to pay their commissions and the expenses of an accounting, but where money taken by the accounting executor for commissions exceeds the amount of commissions to which he would have been entitled at the time, upon accounting the executors should be required to account therefor as still in their hands but without interest.

Where the executors were not authorized by the will to pay the expenses of administration from income an objection to the amount of certain traveling expenses necessarily incurred by the accounting executor in looking after assets of the estate will be disallowed, but payment thereof should be made from the principal as an expense of administration.

As each of the executors may receive full commissions in this case a claim for payments made to the stenographer of the accounting executor for clerical work will be disallowed as not having been sufficiently established.

On the same day, several years before the death of testator, that his son, who under the will was the life beneficiary of the income of a certain trust fund, gave his note to A, the latter gave his note to testator, who loaned him $2,500, the amount of said note, with which to take up the notes of testator's son that had been indorsed by A and now held by a bank. The A note was inventoried at $1,300 and the executors exchanged notes with A, receiving from him the note against testator's son, by his consent, whose claim that he was to pay it at the inventory figure was denied by the accounting executor. Held, that testator's son not having been given any specific bequest by the will there was no fund out of which the executors could take payment for the note, and that they were not entitled at

this time to charge it off against the income, that being the only part of the estate to which testator's son had any claim, but that it was the duty of the executors to proceed in another tribunal for the collection of the note.

Where by the will which did not authorize the executors to invest the funds of the estate the trustees were directed to hold, manage, invest and reinvest all of the trust property as they should deem wise and judicious, and for the best interests of the beneficiaries named and to invest the same as they should deem discreet, it must be held that testator had in mind investments sanctioned by law, *i. e.*, such as have been held by the courts to be wise and judicious, and where the evidence fails to show that the accounting executor made investments which were of the class of securities referred to in *Matter of Hall,* 164 N. Y. 196, such investments must be condemned, and under the proof adduced the son of testator is not estopped to object to the investments as made.

The co-executors of the accounting executor to whom they intrusted the active management of the estate and from time to time had their attention drawn to the manner in which it was being paid out must be held to account therefor.

PROCEEDINGS to compel executors to account.

John G. McDowell in person, and by John F. Murtaugh and Richard N. Thurston, his attorney.

John F. Murtaugh (Richard H. Thurston, of counsel),, for Clara B. McDowell and Elizabeth R. Boyd.

Boyd McDowell in person, and by Baldwin & Allison (Thomas M. Losie, of counsel), his attorneys.

Casper G. Decker in person, and by Turner & Henry, his attorneys.

Jervis Langdon in person, and by Stanchfield, Lovell, Falck & Sayles, his attorneys.

SWARTWOOD, S.    This proceeding was commenced February 17, 1916, by the filing of a petition by John G. McDowell, the son of the testator.

Surrogate's Court, Chemung County, October, 1916. [Vol. 97.

On April 3, 1916, Boyd McDowell, one of the executors, filed an account setting forth in detail all the transactions had by him with reference to the estate, both, as he claims, as executor and as trustee.

On the same date Casper G. Decker and Jervis Langdon, the other two executors, filed separate verified statements in which they declare, in substance, that on the issuing of letters testamentary to the executors named in the will said executor Boyd McDowell caused an inventory of the personal estate to be filed; that thereupon the said Boyd McDowell took possession of the personal property left by the deceased, including bank deposits, certificates of deposit, cash, securities, etc., together with the keys to the safety deposit box, and that the said Boyd McDowell has had sole access thereto from that time on, and that all checks drawn on funds deposited to the credit of the estate of said deceased were drawn by said Boyd McDowell; that all books of account and everything in relation to the estate have been at all times in the possession of said Boyd McDowell, *and they deny any connection with the management of the estate, except that they each, one or the other, countersigned the checks drawn by said Boyd McDowell, as executor.*

On April 3, 1916, John G. McDowell, Clara B. McDowell and Elizabeth R. Boyd filed objections to the account as filed by executor Boyd McDowell. They also filed objections to the verified statements filed by executors Casper G. Decker and Jervis Langdon.

On April 6, 1916, executor Boyd McDowell, by his attorneys, filed an answer to the aforesaid objections.

On April 22, 1916, a supplemental citation was ordered issued by the surrogate to be served on all the remaindermen named in the will of the testator bringing them into this proceeding.

No other or previous account has ever been filed by the executors herein.

The testator died on July 4, 1909. His will was probated and letters testamentary were issued to the three executors, who thereupon qualified as such on July 8, 1909, The inventory was filed on September 4, 1909. The time within which creditors might present claims, pursuant to notice published, expired on January 15, 1910. The inventory showed the value of the personal property of the testator at the time of his death to be $148,980.49.

The will of the testator, dated July 29, 1907, first provided for the payment of debts and funeral expenses, and, second, made certain specific gifts of varying amounts to several persons and corporations. Pararaph 3 provided: ''All the rest, residue and remainder of my estate, both real and personal, property and rights, legal and equitable, of which I may die seized or own or have at the time of my decease, I give, devise and bequeath unto Casper C. Decker, Jervis Langdon and Boyd McDowell, all of Elmira, N. Y., to have and to hold the same unto themselves and to their successors in trust to the uses and for the purposes herein declared, that is to say:

'' That they hold, manage, invest and re-invest all of said trust property as they shall deem wise and judicious and for the best interests of the beneficiaries hereinafter named, said trustees being to that end hereby empowered to sell, grant, exchange, lease, hold or otherwise dispose of the same or any part thereof, subject to the limitations and provisions hereinafter contained (the avails or property into which the same may in any wise be converted being subject to all the conditions hereof applicable to the original property or fund), and to lease, loan and invest the same as they shall deem discreet, and out of the rents, inter-

Surrogate's Court, Chemung County, October, 1916.   [Vol. 97.

ests, income and profits thereof, first to pay the neces-
sary expenses incident to the property, taxes thereon,
expenses of insurance and repairs, and the full main-
tenance thereof, together with all other expenses
attending the execution of the trust, and then to pay
out of such rents, interest, income and profits, as the
same shall accrue annually, as follows:

" 1st. I hereby direct said Trustees to set aside and
properly invest the sum of one thousand dollars
($1,000.00), to be known as the ' McDowell Cemetery
Trust Fund,' the annual income of which shall be
annually expended in the care and maintenance of
what is known as Riverside Cemetery " (with certain
provision that the said $1,000 is to be eventually
turned over to the county treasurer to be held by such
officer for said purposes).

"2d. I direct said Trustees to pay to my sister-in-
law, Elizabeth R. Boyd, of Elmira, N. Y., the income
of ten thousand dollars ($10,000.00), as long as she
shall live, and at her death the principal of said fund
*   *   *   shall be treated the same as the residue of
said trust fund for the support of my son John G.,
and his wife Clara   *   *   *.

" 3d. Out of the remainder of the annual income
derived from said Trust Fund I direct said Trustees
to pay to my son John G. McDowell, and his wife
Clara during the life of my son, such sums in such
manner and proportion for each beneficiary as said
Trustees shall deem judicious and necessary for the
support and maintenance of my son and his wife,
Clara B.   *   *   *."

The remainder of the provisions of the trust relates
to the disposition of the fund after the death of John
G. McDowell (the testator's sole heir-at-law and next
of kin).   Lastly, he appoints Boyd McDowell, Casper

Misc.]    Surrogate's Court, Chemung County, October, 1916.

G. Decker and Jervis Langdon as executors of his will.

The first of the objections filed to the account of Bovd McDowell, together with Mr. McDowell's answer thereto, raises the question whether these executors ever transferred to themselves as trustees the rest, residue and remainder of the estate of the deceased and administered it as such trustees, or whether they still are, and at all times have been, acting simply in the capacity of executors. Counsel for executor Boyd McDowell claims that his responsibility as executor ceased because, as he claims, the funds in his hands are held by him as trustee and the question as to what has become of them is totally immaterial in this proceeding against him as executor. In his claim that the office of executor, its duties and responsibilities, is separate and distinct from the office of trustee *I agree,* but in his assumption that the funds of the estate are in the hands of the trustees as such and not as executors, and that they are not accountable for them as executors in this proceeding, *I do not agree.*

At the outset, it is well to carefully consider the will to the end that we may be able to judge the intention of the testator in making it as he did. The first two sections thereof deal with acts confessedly to be performed by his executors only, but by the 3d section he gives the rest, residue and remainder of his property to the three persons therein named as trustees for certain uses and purposes; that is to say, after his executors had carried out his wishes, expressed in the first two paragraphs of his will, then their duties as executors were at an end and as his trustees they were to take charge of what was left and administer the trust as his will directs. As was held, in substance, in the case of *Olcott* v. *Baldwin,* 190 N. Y. 99, " The inten-

tion of the testator to have the rest, residue and remainder held as a trust fund from a point of time subsequent to his death appears * * * from his separately stating the duties of the executors and of the trustees. * * * The trust fund could not be determined until the completion of the duties of the executors.'' In other words, the duties of the executors and the duties of the trustees are distinct and the will contemplates a time when the duties of the executors shall cease and their duties as trustees shall commence.

This is a very different situation from the one that arises where a will names executors and directs them to hold certain funds in their hands in trust as such. In such a case (see *Johnson* v. *Lawrence,* 95 N. Y. 154), the duties of the executors and trustees may be said to be co-existent and continue to co-exist during the life of the trust. Such, however, is not the case here.

It has repeatedly been held that while an accounting as executors and a transfer of the trust fund to the trustees, pursuant to a decree of a court of competent jurisdiction, is the most satisfactory proof of the completion of their duties in the one capacity and the commencement of their duties in the other capacity, yet such judicial decree is not the only means of proving that the transfer has actually been made. There must, however, exist convincing proof that the trust fund has been actually separated and set apart, that the same has been actually received by the trustees, as such, acting jointly, and that they have actually entered upon the discharge of their duties. In other words, when persons claim to have been acting in one capacity rather than in another capacity or, as is the claim in this case made by executor Boyd McDowell, that they have been acting in both capaci-

ties concurrently, all that the court asks is proof suffi-
cient and convincing that they have been so acting;
that is to say, does a review of the course of conduct
of the persons handling this estate establish that they
have been acting as executors solely or as trustees
solely from a time when they ceased to act as execu-
tors, or have they acted concurrently in both capaci-
ties? A careful examination of all the proofs and
the evidence convinces one that they acted in one
capacity, namely, that of executors only. A résumé of
the facts will best illustrate this conclusion.

It appears that the three executors qualified as such.
They verified and filed the inventory as executors,
thereby certifying that they had received the personal
property of which the testator died seized and pos-
sessed and stated therein. They at once opened an
account with the Second National Bank of the city of
Elmira, N. Y., in the name of the " Estate of R. M.
McDowell." This is the only bank account opened by
the executors, either for the deposit of the principal
of the estate or the income thereof. No bank account
has been opened by the trustees of any kind, either
for the deposit of principal or income. *Matter of
Hood,* 104 N. Y. 103, 107. It does not appear that
books were kept by the executors, either as such or as
trustees, except a book kept in the office of executor
McDowell, in which he states his clerk set down the
income received from securities from time to time.

The first voucher drawn by the executors was for
payment of income to John G. McDowell on August
10, 1909, about a month after letters were issued. The
second voucher was drawn on August 19, 1909, for the
payment of income to Clara B. McDowell. The third
voucher was drawn on August 27, 1909, for payment
of income to Clara B. McDowell. These vouchers
were drawn on the account in the Second National

Bank by Boyd McDowell as executor and counter-signed by one of the other executors as such. There is no claim that at this time the trust fund had been determined and set aside. At this time the specific legacies, debts and funeral expenses had not been paid, the inventory had not been completed and filed, so that these payments of income to John G. McDowell and his wife could not have been income on the trust fund, but simply amounted to the turning over of the interest on the securities left by the deceased. The executors continued to turn over to these beneficiaries the interest moneys from time to time until the commencement of this proceeding in precisely the same way that the first payments, just referred to, were made. It may further be stated that no other or different procedure was had or taken by the executors with reference to the administering of this estate from the very beginning to the time of filing their accounts. In the vouchers filed there is no receipt by the trustees for funds or securities turned over to them by the executors, nor is there any evidence anywhere of a separation and determination of the trust fund, except that in the account filed by Boyd McDowell, the statement is made that Schedule F shows securities, etc., turned over by the executors to themselves as trustees. No date is given when this act was performed, but in his testimony Mr. Boyd McDowell states that in from three to six months after the death of the testator certain bonds were set aside for the trust fund. This, however, is denied by the executors Langdon and Decker in their verified statements filed in this proceeding on April 3, 1916, in which they deny that they had anything to do with the estate except to countersign checks. In the testimony of these two executors there is nothing to prove that they acted

with Mr. McDowell in the ascertaining and separating of the trust fund. The trust fund could not in law be received by one trustee from himself as executor, the rule being that where more than one trustee is appointed all must join in order to make their action legal. *Fritz* v. *City Trust Co.*, 72 App. Div. 532; *Bascom.* v. *Weed*, 53 Misc. Rep. 508; *Ridgeley* v. *Johnson*, 11 Barb. 527.

In the latter case the court said: " The power of trustees over the subject matter of the trust, is equal and undivided. They cannot, like executors, act separately — all must join both in *receipts* and conveyances."

In Schedule F, part 2, of the account filed by executor McDowell the heading appears as follows: " Showing cash advanced to trustees for investment." This cash, amounting to $3,635.43, seems to have been retained in the hands of the executors at the time this executor states that certain securities were turned over to the trustees as the trust fund. The vouchers show that these funds were checked out of the bank on checks drawn by the executors for the purchase of bonds either wholly or in part payment thereof. The checks were not drawn to the trustees, but were drawn direct to the sellers of the bonds or to the bank to cover a draft drawn for the purchase price thereof. So that the executors in these instances, as well as in every other instance where bonds were purchased, used the funds in their hands as such for the purchase of securities which they were not by the will authorized to do — the purchase of securities being a trustee power and duty only. Counsel for executors contend that inasmuch as the executors acted like trustees they are trustees. This, of course, is a theory merely. It is neither fact nor law. No authority has been cited to support this con-

tention, nor does any argument based on the provisions of the will support it. It does not follow that because the executors paid over income from the estate to the beneficiaries named in the will, and because they invested the funds of the estate, by those acts alone they constitute themselves trustees. The will gives the rest, residue and remainder of the estate to the trustees. By this devise they take as joint tenants and any act in relation thereto must be their joint act, and until the rest, residue and remainder has been determined and turned over to the trustees as such they do not acquire title to it, and unless there is an actual separation and setting apart of the trust funds the question whether the trustees are acting as such solely can, never be determined with certainty. Unless the fund has been separated there is nothing for them to act on and until they have actually received the trust fund the trustees cannot act as such. *Matter of Hood,* 98 N. Y. 363; *Hurlburt* v. *Durant,* 88 id. 121; *Cluff* v. *Day,* 124 id. 195; *Olcott* v. *Baldwin,* 190 id. 99; *Matter of Kellogg,* 214 id. 460.

Counsel for the executors rely on the decision in *Matter of Kellogg,* 214 N. Y. 460, to support their contentions. In that case one of the trustees named in the will renounced and the other two entered upon their duties as trustees. Later, the trustee who had renounced tried to withdraw his renunciation. At page 465 the court says: " It appears by the affidavit of said Kellogg that prior to the attempted withdrawal of said renunciation, the other trustees had entered upon their duties *as trustees,* had *set apart* for the several trusts securities of the estate amounting to one million dollars and had purchased in their *joint names as trustees* a real estate mortgage amounting to seventy thousand dollars and corporate

stock of the city of New York amounting to forty thousand dollars.''

The court held that '' It was then too late for the appellant to withdraw his refusal to serve as trustee.'' Observe that the *trustees* had entered upon their duties.   They had *set apart* one million dollars of securities.   They had purchased a seventy-thousand dollar real estate mortgage and forty thousand dollars of the corporate stock of the city of New York in *their joint names as trustees.*

This is an entirely different situation from what we have in the case at bar.   In this case, so far as any joint act of the trustees is concerned, not a dollar's worth of securities has been set apart by them as such.   Not only that, but such stocks as have been purchased have been taken in the name of Boyd McDowell as an individual, not as an executor, not as a trustee.   The evidence and proofs fail to show *that joint action* by the trustees with reference to the funds of the estate which the law requires, and as was done by the trustees in the *Kellogg* case.   The testimony shows that in every instance where securities were purchased with the funds of the estate the three trustees did not act jointly.   The purchase in every instance was made by executor Boyd McDowell alone, and it was only in those cases where the trade required the payment of a difference and a check had to be drawn that *one only* of his co-executors was asked to sign the check, and thus had an opportunity of acquiring knowledge as to the purchase of the securities.

There can be no dispute that the rule of law stated in the *Kellogg* case, at page 466: '' It is not the law, however, that trustees may not receive any part of the estate, consisting of personalty, until the executor has accounted and been directed to pay it over,'' is,

Surrogate's Court, Chemung County, October, 1916.   [Vol. 97.

and has been the settled law of the state; but the facts of the case at bar do not bring it within this holding. Here the trustees have not set apart to themselves as such the trust fund provided by the will. And again, at page 467 of the opinion in the *Kellogg* case, the court states: "The trustees were not bound to wait until the final accounting of the executor before investing the money belonging to the trust funds in the manner directed by the testator."

This is perfectly true, but before investing the money they must have the trust fund in their hands as trustees, which is not the case here. The facts of this case do not bring the action of the executors here within the holding just quoted.

The conclusion therefore is, for the reasons hereinbefore stated, that the evidence and proofs do not establish the fact that the trust fund, provided for in the will, has been determined, separated and set apart by the executors and received by the trustees, but that all the funds of the estate remain in the hands of the executors who are still acting and accountable as such.

As to the second objection, that is, the taking of commissions by executor McDowell, while the amount of $1,800 taken by Mr. McDowell as his commissions exceeds the amount of commissions to which he would have been entitled at that time on an accounting, yet the executors had a right to retain in their hands sufficient funds to pay their commissions and the expenses of the accounting, and while on this accounting they should be required to account for the said $1,800 as still in their hands, they should not be required to pay interest thereon for the reason stated.

As to the third objection, namely, certain traveling expenses taken by executor McDowell from the income of the estate — the will does not give the executors, as

such, power or authority to pay expenses from the income, and since they have already been held to have been acting as executors solely, and it appearing from the evidence and proofs that the expenses were necessarily incurred in looking after the assets of the estate, this objection is disallowed. The payment, however, should be made out of the principal of the estate and not out of the income and regarded as an expense of administration.

As to the fourth objection, namely, the payments to Grace Brown for clerical work — the general rule is well stated in *Matter of Harbeck*, 81 Hun, 28: " The general rule is that administrators, executors and trustees are not only bound to assume the responsibilities and exercise the discretions of their office, but must also perform within reasonable limits the actual manual labor requisite to the due execution of the trust. The fact that they are busy men and have not as much time to give to the management of estates as other individuals, cannot be permitted to affect the legal rule, which must be applied and enforced whenever a question is presented touching the propriety or legality of the expenditure of the moneys of an estate."

In other words, the test would seem to be the necessity for the services and the reasonableness of the disbursements. The testimony of executor McDowell on this matter is to the effect that there came a time when he could not afford to pay Miss Brown, who was the stenographer in his office, as much salary as he had theretofore been paying and that it was agreed between him and his co-executors that she would be paid $25 per month out of the funds of the estate. It nowhere appears specifically what she did to earn this compensation. The amount of labor that she performed is not stated, so that it is impossible to deter-

Surrogate's Court, Chemung County, October, 1916.   [Vol. 97.

mine whether the work was necessary and the pay reasonable. The most, it seems, that Miss Brown did was to write out such letters as were necessary to be written with reference to the estate. It does not appear that any books were kept, except the book in which interest receipts were set down. It also appears that after Miss Brown left the employ of Mr. McDowell, Mr. McDowell did the work for the estate himself personally.

The conclusion, therefore, is that inasmuch as in an estate of this size each of the executors may receive full commissions, this claim should be disallowed, the proof of the work performed by her and its necessity not having been sufficiently established to warrant its allowance.

As to the fifth objection, viz., the right of the executors to charge off the note of John G. McDowell against the income — it appears that on September 25, 1907, John G. McDowell gave his note to Andrew Fitzsimmons; that on the same day Andrew Fitzsimmons gave his note to the testator; that the testator loaned to Andrew Fitzsimmons the amount of the note, viz., $2,500, with which to take up notes of John G. McDowell that had been indorsed by Fitzsimmons and were held by the Second National Bank. The Fitzsimmons note was inventoried by the appraisers at $1,300. Some time after the executors qualified, they exchanged notes with Mr. Fitzsimmons, receiving from him the note against John G. McDowell. It seems that this was done by the consent of John G. McDowell, the only difference being that John G. McDowell claims that he was to pay the note at the same amount that it was inventoried for by the appraisers, namely, $1,300. This part of the arrangement is denied by executor McDowell.

John G. McDowell, not having been given any spe-

cific bequest by the will of the testator, to be paid by him by the executors, there is no fund out of which the executors can take payment for this note. Even as trustees, were they acting as such, I doubt very much whether they would have a right to deduct it from his income. Certainly there is no authority for the surrogate to direct the payment of this note out of any income that may hereafter accrue, or may now be accrued, to the credit of John G. McDowell, for the reason that there is a dispute as to the amount to be paid by John G. McDowell. It seems that he consented that the executors might purchase this note with funds of the estate at $1,300.

My conclusion, therefore, is that it is the duty of the executors to proceed in another tribunal for the collection of this note, and that they are not entitled at this time to charge it off against the income of the estate, that being the only part of the estate to which John G. McDowell has any claim. *Rudd* v. *Rudd,* 4 Dem. 335.

The facts in the case of *Rudd* v. *Rudd* are very similar and I, therefore, feel compelled to follow the decision therein rendered.

As to the sixth objection, viz., the purchase of securities by the executors —the will in this case does not give the executors authority to invest the funds of the estate. The general rule is that executors, as such, have no authority to invest the funds of an estate. It has already been held herein that these executors did not receive the funds as trustees and thus did not acquire the right to make investments, as provided in the will. But conceding, for the sake of argument merely, that they had been acting as trustees, it appears by the testimony that all these investments were made by Boyd McDowell acting alone. In cases where it was necessary that a check be drawn

for the full or part payment of the purchase price of securities one of the other executors was asked by Mr. McDowell to countersign the check as executor, so that there was never any joint action on the part of all three executors in the purchase of securities. Even though the trust fund had been separated and set apart and vested in the trustees, and they had made the investments set forth in the account filed, each investment would necessarily have had to have been by their joint act. And if they had been made by the joint act of the trustees, yet, when gauged by the rules of law applicable to the investment of trust funds, there is grave doubt whether they are authorized under the power given in the will. When carefully and thoughtfully read and considered the will does not give the trustees a broad discretion in the matter of investments. It provides that "they hold, manage, invest and re-invest all of said trust property as they shall deem *wise and judicious and for the best interests of the beneficiaries named.*" And later on, in the same paragraph, the expression is used that they are to " invest the same as they shall deem *discreet.*" Is it not reasonable to hold that by the enjoining by the testator on the trustees that they act wisely, judiciously and discreetly he had in mind the investment in funds such as find sanction in the law; that is to say, such as have been held by the courts to be wise and judicious investments.

In *Matter of Hall,* 164 N. Y. 196, 199, 200, the court said: " The range of so-called ' legal securities ' for the investment of trust funds is so narrow in this state that a testator may well be disposed to grant to his executors or trustees greater liberty in placing the fund of the estate. But such a discretion in the absence of words in the will giving greater authority should not be held to authorize investment of the fund

in new speculative or hazardous ventures. *If the trustees had invested in the stock of a railroad, manufacturing, banking or even business corporation, which, by its successful conduct for a long period of time, had achieved a standing in commercial circles and acquired the confidence of investors, their conduct would have been justified, although the investment proved unfortunate.* But the distinction between such an investment and the one before us is very marked. Surely there is a  mean between a government bond and the stock of an Alaska gold mine, and the fact that a trustee is not limited to the one does not authorize him to invest in the other.''

It will be seen from the foregoing that the securities of concerns which by their successful conduct for a long period of time had achieved a standing in commercial circles and acquired the confidence of investors might be justified.   Applying that rule to the purchase of some of the securities set forth in the account, as follows, such investments were not justified: $10,000 of Empire Lumber Company bonds; $11,000 Sacramento Valley Irrigation bonds; $16,000 Birmingham Ensley and Bessemer Railroad Company bonds; $15,000 Rochester, Syracuse and Eastern Railway Company bonds, and $4,500 Lewiston Land and Water Company bonds, making a total of $56,500 of par value of bonds on which the testimony shows the interest has defaulted.   The evidence of executor McDowell, who made these purchases, fails to show that they were of the class of securities referred to in *Matter of Hall, supra.* It also appears that the investment in these securities falls under the condemnation of the rule in *Ormiston* v. *Olcott,* 84 N. Y. 339, 344, where the court said: '' We do not hesitate, therefore, to recognize and declare as the *general rule* that the trustee who invests beyond the jurisdiction does so at

the peril of being held responsible for the safety of the investment.''

We now pass to the consideration of the matter of the contention of the executors to the effect that John G. McDowell is estopped to raise the objections he has herein. The rule as to estoppel seems to be well stated in the headnote to *Adair* v. *Brimmer*, 74 N. Y. 539, as follows: ''Also, held, that to establish a ratification by the *cestui que trust*, in such a case, the ratification must not only be clearly proved, but it must be shown that it was made with full knowledge of all the material facts, and also that the *cestui que trust* was fully apprised of. their effect and of his or her legal rights in the premises.''

An examination of the testimony and proofs herein shows that the contention of the executors falls far short of coming within this rule. John G. McDowell admits that he was consulted by executor Boyd McDowell as to the investment in the bonds of the city of Shawnee, Okla., but he denies that the said executor said anything to him about any of the other investments. However, the testimony of Boyd McDowell on the subject does not go far enough to satisfy the rule quoted from *Adair* v. *Brimmer, supra*.

The conclusion, therefore, is that the evidence does not establish the estoppel claimed by the executors.

Lastly, as to the liability of the co-executors, Langdon and Decker. As has already been stated herein, all three executors took the oath of office, they entered upon the discharge of their duties as such, made an inventory of the estate, swore to the same and filed it in the surrogate's office, thereby, in effect, certifying to the court that they had in their possession the funds, securities and property therein set forth. Having received this property as executors, they must account for it. Executor Boyd McDowell files a full

account of all his transactions showing what has been done with the estate and its present condition. Executors Langdon and Decker account for their part in the administration of the estate in separate statements, worded practically alike, from which it appears that, aside from taking the oath and making and filing the inventory, they had no further connection with the management of the estate, that being handled entirely by executor McDowell, except that all checks (over 300 in number) drawn for the paying out of the funds of the estate were countersigned as executor by one or the other of them in each and every instance. By these checks the debts, funeral expenses, expenses of administration and legacies were paid. In addition thereto, income was by these checks disbursed to John G. McDowell, Clara B. McDowell, Elizabeth R. Boyd and Riverside Cemetery Commissioners. These checks were also drawn for the purchase price of securities purchased by the executors. So that it appears that the co-executors had from time to time their attention drawn to the manner in which the estate was being paid out. The disbursing of the funds of an estate is one of the most important functions to be performed by executors, and one which should be done with the exercise of much care and prudence. It should be stated, however, that in filing these statements I do not believe that these executors wish to be understood as attempting to escape any liability as co-executors with Mr. McDowell, to whom they intrusted the active management of the estate. But, under the holding in the case of *Matter of Niles,* 113 N. Y. 547, where the general rule is well stated, I believe they are equally liable with their co-executor.

My conclusion, therefore, is that the executors should be charged with the amount of the personal property mentioned in the inventory and the increase

thereon as shown in Schedule A of the account filed; they should also be charged with all the income they have received; and they should, in addition thereto, be charged with income on the securities that have defaulted in payment of interest from the date of such default at four and one-quarter per centum per annum, being the average rate of income that was borne by the securities exchanged by them for those that have defaulted. They should be credited with the amounts that they have paid to John G. McDowell, Clara B. McDowell, Elizabeth R. Boyd, Riverside Cemetery Trustees, the expenses of the estate, as shown by Schedule C, except the item of $1,800 commissions, hereinbefore referred to; the debts paid, as shown by Schedule D; legacies paid, as shown by Schedule E, and the current expenses paid, as shown by Schedule H, except the charge therein for payments made to Grace Brown, which have been disallowed.

Let findings and final decree settling the accounts of the executors be prepared accordingly.

Decreed accordingly.