Matter of the Judicial Settlement of the Accounts of CASPER G. DECKER, JERVIS LANGDON and BOYD McDOWELL, as Trustees under the Last Will and Testament of ROBERT M. McDOWELL, Deceased.

(Surrogate's Court, Chemung County, February, 1920.)

*Surrogate's Court — accounting of testamentary trustees — trustees, although given discretion under the law as to investments, will be held liable for losses on bonds of companies organized and doing business without the state of New York, which bonds in almost every instance were purchased from the proceeds of the sale or by the exchange of good securities belonging to the trust estate without the consent of the beneficiaries — liability for income on defaulted bonds — costs and disbursements governed by Code Civ. Pro., §§ 2743-2747 — defense of investment made in good faith — commissions — separate trusts must pay their own — annual rests.*

PROCEEDINGS upon the settlement of the account of trustees.

When this matter was first before this court it was on a citation issued requiring the executors to account as such. Executor McDowell filed a complete account of his transactions with reference to the estate, both as executor and trustee. Executors Decker and Langdon filed a verified statement setting forth, in substance, that they had had nothing to do with the estate after the taking of the inventory. On that state of facts this court held (*Matter of McDowell,* 97 Misc. Rep. 306) the executors liable for the funds of the estate as shown by the inventory, less disbursements made by them in compliance with the provisions of the will and expenses. This court still believes that that

was the only holding that could possibly have been properly made at that time for the reason that two of the trustees, in effect, denied that they had joined in the setting up of the several trusts provided for in the will. In other words, the necessary joint action on the part of all the trustees was lacking.

The Appellate Division sent the matter back on the theory that there had been a mistrial and for the purpose of giving the accounting parties the right to defend investments made by them by invoking the discretion which the will placed with them as trustees. That court also held (*Matter of McDowell,* 178 App. Div. 243) that the offices of executor and trustee were coexistent and ran together. That is true in so far as the two offices exist contemporaneously; but to say that Mr. A as executor and Mr. B as trustee both have dominion over the same fund at the same time is to my mind quite erroneous.

On the second hearing the several questions raised by the objections filed to the account were settled in one decision without regard to the question of whether the two proceedings (one for the settlement of the executors' account and the other for the settlement of the trustees' account) should be united. In that decision this court held (*Matter of McDowell,* 102 Misc. Rep. 275) that the investments made by the trustees were illegal for the reason that they were in new, untried ventures, and were not within the discretion given the trustees by the will as was intended by the testator. It is not necessary here to repeat what was said in that decision (102 Misc. Rep. 283–296) leading up to the conclusion that the trustees did not employ such vigilance, sagacity, intelligence and prudence as, in general, prudent men of discretion and intelligence employ in like matters of their own affairs. In that decision this court also held that the investment of the trust funds in securities outside of the jurisdiction was illegal for the reason that the evidence did not show any strong necessity or emer-

gency warranting the same. In other words, the trustees did not show that proper investment of trust funds could not have been obtained within this jurisdiction. From that decision an appeal was taken to the Appellate Division, which court affirmed the decree (*Matter of McDowell*, 184 App. Div. 646) in so far as it fixed the liability of executor-trustee McDowell, and further held " We are not clear whether, upon the findings, a liability is established against the co-trustees. As far as they are concerned, to an extent the trial was a mistrial. The attorney for the respondents insists that they were not consulted with reference to these securities. The attorney for the appellants contends that the purchases were made in each case with their knowledge and consent. It is plain that the interests of McDowell and the other two trustees are not in harmony. It is for his interest to show that they knew of and consented to his acts. The decree leaves us in the dark upon the question. In the interest of justice a retrial of the question as to the liability of Decker and Langdon on account of the defaulted securities should be had, so that the facts may be fully shown and the court may have the benefit of the argument and labor of counsel in determining whether the facts shown establish a liability against them." It also required this court to restate the account so far as should be necessary to conform the same to that decision and to credit against any sum found due from the executors, trustees, the amount of their commissions.

Pursuant to the decision of the Appellate Division, this matter was regularly brought on to be heard and additional evidence and proofs taken. Thereafter the account of the executors as such was settled, without objection, by a decree duly entered, so that the sole matter before the court now is the settlement of the account of the trustees as such, thus avoiding much confusion that has heretofore existed by trying to settle the two accounts in one proceeding.

Baldwin & Allison (Thomas M. Losie, of counsel), for trustees.

Alexander S. Diven, for John G. McDowell and Clara B. McDowell.

SWARTWOOD, S.   The principal question now before the court for determination is the liability of the co-trustees, Casper G. Decker and Jervis Langdon. Additional evidence and proofs have been taken and it now appears from the testimony of all three trustees that the several trusts provided for in the will of the testator were set up by them in September, 1909, two months after the probate of the will.  It further appears that Trustees Decker and Langdon mutually acquiesced, approved and confirmed all the acts of Trustee McDowell in the investment of the funds under the trust.   In other words, they now take the position that if Trustee McDowell is liable they are also liable because they approved the purchase of the securities in question and were parties to the transactions.   The question, therefore, of the joint action of the trustees in the investment of the funds of the estate is eliminated and the sole question before the court is, is the language of the will broad enough to warrant the holding that the testator intended to give the trustees authority to invest the $62,970 of funds of the estate in new, untried ventures?   This court has already held (102 Misc. Rep. 292) that in construing the provisions of the will conferring power in the trustees to invest and re-invest funds of the estate that some light is shed on what the testator meant by wise and judicious investments by examining the character of the investments made by him and which were left by him and which formed the trust fund at its inception.   There is no charge of actual fraud or bad faith made against the trustees so that, as before stated, the sole question is the proper construc-

tion of the will to determine whether the discretion given is broad enough to warrant the investments made. The surrogate, having heretofore held the trustees liable for the amount invested in bonds that have defaulted for the reasons and on the grounds stated in his decision (102 Misc. Rep. 283–296), now finds as follows:

1. That the following amounts of the trust funds were illegally invested by the three trustees in the bonds of new, untried enterprises:

| | |
|---|---:|
| Rochester, Syracuse and Eastern Railroad Company | $13,445 |
| Empire Lumber Company | 9,000 |
| Sacramento Valley Irrigation Company | 11,000 |
| Birmingham, Ensley and Bessemer Railroad Company | 13,600 |
| Lewiston Land and Water Company | 4,500 |
| Gulf, Florida and Alabama Railroad Company | 11,425 |
| Making a total of | $62,970 |

2. That good, satisfactory securities of the estate were, in nearly every instance, either exchanged for or sold by the trustees to obtain funds for the purchase of the aforesaid bonds of companies organized and doing business outside the state of New York, with one exception, without any pressing emergency or necessity being shown therefor.

3. That such investments were made without the consent or approval of the beneficiaries of the trust, and the same are disapproved and disallowed, and the trustees are surcharged therewith, with interest at the rate of four and one-half per cent per annum to January 1, 1918 (the date to which the account is rendered) as follows:

47

| | | | |
|---|---|---|---|
| R. S. & E. R. R. Co. bonds. | $13,445 | Int. from May 1, 1915. | $1,613 40 |
| Empire Lumber Co. bonds. | 9,000 | Int. from July 1, 1915. | 1,012 50 |
| Sac. Valley Irri. Co. bonds | 11,000 | Int. from June 1, 1913. | 2,268 72 |
| B. E. & B. R. R. Co. bonds. | 13,600 | Int. from Mch. 1, 1914. | 2,346 00 |
| Lewiston L. & W. Co. bonds | 4,500 | Int. from Oct. 1, 1914. | 658 13 |
| O. F. & A. R. R. Co. bonds | 11,425 | Int. from July 1, 1917. | 257 06 |
| | $62,970 | | $8,155 81 |

4. That by the supplemental account it appears that the trustees have accounted for $2,347.50 of such income on defaulted bonds and are, therefore, chargeable only with the difference of $5,808.31, as will appear by the summary statement of the income account hereinafter set forth.

5. That the state and condition of the trustees' account of principal is as follows:

| | | |
|---|---|---|
| Securities received from the executors.................. | | $124,216 28 |
| Cash received from executors......................... | | 3,635 43 |
| Gain, as shown by Schedule C and by the supplemental account ........................................ | | 3,133 75 |
| Household furniture (as per inventory).............. | | 1,037 00 |
| Real estate (by the will)............................ | | 15,000 00 |
| Total with which the trustees are to be charged... | | $147,022 46 |
| They are credited with: | | |
| Real estate on hand unsold.............. | $15,000 00 | |
| Amount returned to executors.......... | 7,523 49 | |
| Loss on sale of securities................ | 2,460 00 | |
| Household furniture on hand........... | 1,037 00 | |
| and the following securities to which no objections have been raised: | | |
| John G. McDowell (note)............... | 1,300 00 | |
| John G. McDowell (loan)............... | 500 00 | |
| M. W. & S. R. R. Co. bonds............. | 4,875 00 | |
| City of Shawnee bonds.................... | 20,200 00 | |
| Ontario Power Company bonds.......... | 4,750 00 | |
| Youngstown & Ohio R. R. Co. bonds...... | 4,925 00 | |
| City of Swift Current bond.............. | 6,031 20 | |
| Penna. R. R. Co. bonds.................. | 4,675 00 | |
| Westchester County bonds............... | 5,059 81 | |
| Traveling expenses looking after defaulted securities .......................... | 457 25 | |
| Expenses of printing.................... | 9 24 | |
| Paid Emma Shay, stenographer.......... | 61 50 | |
| Paid Mabel Flesh, stenographer........ | 39 00 | |
| | | 78,903 49 |
| Leaving a balance in their hands of.............. | | $68,118 97 |

(of which $62,970 is represented by the cost of defaulted securities) with which the trustees are charged, subject to the payment of their commissions

of $905.34 to which each trustee is entitled, amounting in the aggregate to $2,716.02; subject, also, to the allowance of the trustees' bill of costs and disbursements which are taxed at the sum of $1,664.50; also subject to the costs heretofore allowed petitioners, contestants, (John G. and Clara B. McDowell) for counsel fees and expenses on all proceedings to date of entry of last decree, February 25, 1918, $2,563.44.

In arriving at the commissions to which the trustees are entitled, they have been allowed each one-half of a full set of commissions for receiving the principal, including the real estate, together with commissions on disbursements made and for disbursing the items of costs to the trustees and to the original petitioners, as set forth.

The amount of trustees' costs and disbursements have been taxed, after considerable study of the question, as follows:

The disbursements amounting to $794.50 have been allowed in full, but the amount charged as costs of $4,000 to counsel and $3,000 to attorneys cannot be taxed because the affidavits of the counsel and the attorney do not support those respective sums. This whole subject of costs is covered by sections 2743 to 2747 of the Code of Civil Procedure which provide solely for the allowance of costs on the rendering of a decree, where there has been a contest, $70, and, in addition thereto, where a trial or hearing upon the merits necessarily occupies more than one day, $10 for each additional day necessarily occupied in the trial or hearing and in preparing therefor. Section 2746 does not permit the surrogate to allow as costs time spent by the attorneys in "examination of the decision and decree of the surrogate * * *, drawing and procuring service of notice of appeal and work upon all appeal papers, three days going and coming and attending at Appellate Division in Albany, work upon briefs for the surrogate and in the Appellate Division, work upon briefs for motion for re-argu-

ment and permission to appeal to the Court of Appeals, work upon several applications for immediate payment of income," as stated in the affidavits of the attorney. Neither does this section permit the allowance of costs by the surrogate for " Going over decision and decree of surrogate. Preparing appeal papers and record. Arguing appeals in Appellate Division. Preparing briefs for surrogate and in the Appellate Division and preparing supplemental brief for Appellate Division. Preparing for and arguing motion to dismiss appeal in Appellate Division. Preparing brief and arguing motion for re-argument and permission to appeal to the Court of Appeals. * * * Preparing for and appearing in Appellate Division on motion to pay income," as shown by the affidavit of counsel.

By section 2747 of the Code the surrogate is given discretion to allow an executor, administrator, guardian or testamentary trustee upon a judicial settlement of his account such a sum as he deems reasonable for counsel fees and other expenses not exceeding $10 for each day *necessarily occupied in preparing his account for settlement and the drawing, entering and executing the decree.* This bill of costs was filed February 4, 1920, and is headed " Supplemental Account of Petitioners' Disbursements." The disbursements proper of $794.50 were verified by Trustees McDowell and Decker August 11, 1919, when the account was filed. The bills of counsel and attorneys were verified by Attorney Baldwin February 4, 1920. The affidavit of Attorney Baldwin as to his services was verified August 4, 1919, and that of counsel Losie as to his services rendered was verified July 24, 1919. If it is claimed that this is a supplemental account filed by the trustees, then it should have been verified by the trustees and a citation should have been prayed for and issued so that all parties to the proceeding might have the opportunity of filing objections, if they so desired, and have their day in

court. I think, however, that it is properly construed as a bill of costs, and have treated it as such, and wish to call the attention of the attorneys and counsel to Milliman on the Law of Costs, pages 256 to 277, and to the decision in *Matter of Kreidler,* 68 Misc. Rep. 412, where Mr. Surrogate Wheeler, of Steuben county, very ably reviewed the whole subject of costs in Surrogates' Courts.

The present sections 2746 and 2747 of the Code of Civil Procedure contain the provisions of sections 2561 and 2562 of the Code as they read at the time of the decision in *Matter of Kreidler,* so that everything said by the surrogate in that decision is applicable on the question before the surrogate here. The surrogate has, therefore, allowed for 100 days preparing the account; preparing for trial; trial at $10 a day plus $70, costs on the contest, together with $794.50 disbursements; further than this, I do not believe I am authorized to go on the supporting affidavits. As was stated in *Matter of Kreidler, supra,* p. 414: " * * * the party's liability to his attorney or counsel is not measured by the allowance of the surrogate. It may well be more than the allowance. The claim of the counsel or attorney is against the party employing him, and he is entitled from such party to a fair compensation for his services, and for all his expenses and disbursements, paid or incurred under his retainer; and, whether the party obtains any costs or allowance, it matters not to the attorney, as a matter of law." And again, p. 416: "An accounting party who makes a claim for the services of his counsel or attorney in the course of administering an estate, up to the time of beginning a proceeding for the settlement of his account, should pay his counsel for such services and credit himself in his account therefor, so that the account may be examined and challenged by all parties in interest, and examined also by the surrogate." Citing authorities.

For the reason that the trustees are, I believe,

defending their investments in good faith, the costs of contestants are not awarded against them personally, and for the same reason they are allowed costs to be paid out of the principal. The statement of my belief that they are defending their investments in good faith is founded upon the letter quoted in the opinion in 102 Miscellaneous Reports, page 297.

In explanation of the items of expenses allowed: the trustees take credit in their account of income disbursed for the sum of $2,238.90, as per Schedule D, which is made up of several items, also the sum of $155.87, as shown by the supplemental account. I have heretofore decided that the item, $1,175, paid to Grace Brown for services rendered the trustees should be disallowed. The reasons for the disallowance are found in the surrogate's opinions (*Matter of McDowell,* 97 Misc. Rep. 306 and in 102 id. 275) and the item is, in addition to those reasons therein stated, disallowed for the further reasons that the *executors* have received a full set of commissions amounting in the aggregate to $5,045.28, and for attorneys' services the sum of $4,750 in part for assisting in preparing the accounts, etc., and the trustees on this accounting are allowed one-half of full commissions for receiving principal and full commissions on disbursements and for receiving and disbursing income.

The surrogate further holds that all expenses incurred in the litigation in reference to this estate should be paid from the principal for the reason that the accounting was originally petitioned for by the beneficiaries of the trust and conducted by them with the view of preserving the estate, and the expenses thereof should be a charge upon the principal and not upon the income. As the principal is reduced by the payment of expenses, the income is proportionately reduced, and the beneficiaries of the residuary trust thereby, in that way, pay their fair and just proportion of the expenses. Further than this, I do not

believe that the testator, when he provided in his will that the expenses of administering the trust were to be paid from the income of the residuary trust, contemplated prolonged and expensive litigation such as this has been in order to preserve the trust intact, and I do not believe that that clause in the testator's will warrants the charge of such expenses against the income of the residuary trust.

It has, therefore, been necessary to separate these items of expenses, and all items for general running expenses of the administration of the trust will be charged against the income as well as all taxes, insurance, etc. It will readily be seen that as to that part of the estate consisting of real property the time will come when repair bills will amount to a very considerable sum, and I am informed from what has been said during the settlement of this account, that repairs to the real property during the past year will amount to about $2,000, thus reducing the income to the beneficiaries to a small amount.

The following is a summary statement of the income account:

The trustees are charged with income received as shown by Schedule D....... $45,341 97

Income received, as shown by supplemental account ..................... 2,225 00

Income charged on defaulted securities as heretofore set forth . . ................·... $8,155 81

Less the sum of............ 2,347 50

As shown by the supplemental account to have been received and accounted for in the first item above, leaving a balance with which they are chargeable of .......................... 5,808 31

Making the total with which the trustees are charged ...................... $53,375 28

The trustees are credited with the following disbursements:

| | | |
|---|---:|---:|
| Taxes paid on real property. | $5,157 | 31 |
| Running expenses of the trust, as shown by Schedule D and the supplemental account . . . . . . . . . . . . . . . . . | 652 | 78 |
| Income paid cemetery trust.. | 239 | 24 |
| Income paid on Elizabeth R. Boyd trust . . . . . . . . . . . . . | 3,831 | 46 |
| Income paid on residuary trust (John G. and Clara B. McDowell) . . . . . . . . . . . | 32,611 | 57 |
| Total . . . . . . . . . . . . . . . . . . . . . . | $42,492 | 36 |
| Leaving a balance of . . . . . . . . . . . . . . . . | $10,882 | 92 |

of which $143.91 belongs to the cemetery trust, subject to the payment of the trustees' commissions amounting to $19.15 and $10,739.01 belonging to John G. McDowell and Clara B. McDowell, subject to the trustees' commissions, amounting in the aggregate to $2,047.48. No commissions have been allowed on the Elizabeth R. Boyd trust for the reason that no funds are in the hands of the trustees out of which to pay the same. These trusts have each been separately set up, as appears by the testimony of Boyd McDowell, at pages 262 and 263 of the first Printed Case on Appeal; also by Schedule K of the original account of the executors and trustees as filed as follows:

## " SCHEDULE ' K.'

" Showing a list of securities held by us as testamentary trustees in the three trust funds created by the will.

" PART 1.

' McDowell Cemetery Trust Fund.'
Herein otherwise called ' Riverside Cemetery Fund.'

1 Shawnee, Okla., 5 per cent bond.....·   $1,000 00
   ' Elizabeth R. Boyd Fund.'
10 Shawnee, Okla., 5 per cent bond.....   10,000 00
   Residuary Fund.
15 Rochester, Syracuse & Eastern R. R.
   1st Mortgage 5 per cent bonds,
   etc., etc.''  ...................   15,000 00

It also appears by Schedule B of the executors' account, as printed on page 34 of the case on appeals that these three funds were treated separately and referred to as separate funds by the trustees.

Each trust must pay its own commissions. It would not be proper to take commissions from the income of the residuary trust to pay for the receiving and disbursing the funds of the Elizabeth R. Boyd trust. The decree should direct the trustees to pay to the beneficiaries of the cemetery trust the sum of $124.76. It should direct the trustees to pay to John G. McDowell or Clara B. McDowell the sum of $8,691.53, that being the sum found in their hands due the said beneficiaries, and the same should be directed to be paid forthwith.

In computing the commissions on the income received and disbursed by the trustees, the whole residuary fund has been treated as disbursed, that is to say, one full set of commissions has been allowed to each trustee. The trustees claim that they are entitled to commissions computed on annual rests. This court decided (*Matter of McDowell,* 102 Misc. Rep. 275) that the trustees having rendered only one account were entitled to commissions on the *entire amount* of income received and disbursed, and not to commissions on *annual payments.* In Twyefforts New York

Estates and Surrogates' Practice, page 424, the rule is laid down as follows: "Although the trustee pays the income of the trust fund each year to the life beneficiaries without deducting his commissions therefrom, he is nevertheless entitled, on his judicial accounting, to commissions on the *entire* amount of income received and paid out; but not to commissions on *annual payments.*" *Estate of Lemoine*, N. Y. L. J. May 6, 1915. In *Matter of Bushe*, 227 N. Y. 85, the Court of Appeals reversed the decision of the Appellate Division and affirmed that of the surrogate. The surrogate in that matter awarded commissions on the entire amount of income received and paid out, and not on annual payments. The Appellate Division in reversing the surrogate on other matters awarded commissions on annual payments, and while the matter is not mentioned in the opinion of the Court of Appeals, it would seem that it must have been argued before that court for the reason that the Appellate Division had reversed the surrogate on that particular phase of the case, so that the reversal by the Court of Appeals of the Appellate Division and the affirmance of the surrogate's decision would seem to be authority for the holding of the court in this matter.

Let a decree be entered accordingly, except that the balance found due from the trustees as the principal of the residuary trust be directed to be paid by them within one year from the date of the entry of the decree, less the sum herein found due them as their commissions.

Decreed accordingly.