In the Matter of the Estate of AMELIA E. CLARK, Deceased.

Surrogate's Court, Kings County, January 19, 1938.

*Wing & Wing* [*James G. Purdy* of counsel], for the petitioner The Union and New Haven Trust Company, as trustee.

*Walter L. Post*, for the contestant Donald Thum Clark, beneficiary of trust established under the will of decedent.

WINGATE, S. The issues in this contested accounting by a trustee are obvious by-products of the collapse in real estate values attendant upon the depression. They concern the propriety of the act of a corporate fiduciary in investing the funds of the trust for an infant in a participation interest in a first mortgage on certain improved property in New Haven, Conn.

The will, which was probated in 1926, appointed The Union and New Haven Trust Company of New Haven, Conn., executor and trustee, and gave it the sum of $7,300 with directions " to hold, manage, invest and reinvest the same *as to it shall seem best* " (italics not in original), and to pay and expend the income, and up

to $2,000 of the principal, for the decedent's nephew, Donald Thum Clark, until he attained the age of twenty-five years, and then to turn over the remaining principal to him.

The executor and trustee, which is a Connecticut corporation, having its place of business in New Haven, duly qualified and settled its accounts as executor, and since 1928 has been acting solely in the capacity of trustee. The present controversy relates to the investment of the sum of $5,300 of the trust funds remaining after the making of the authorized $2,000 invasion of principal for the benefit of the *cestui que* trust.

The amount in question was invested by it on November 9, 1927, in a participation in a mortgage totalling $100,000, placed by it for trust investment purposes on an apartment property located at 23–31 Dwight street, New Haven, Conn. No hearing was had on the issues raised by the objections to this method of placing the funds of the trust, but certain pertinent facts have been embodied in a stipulation which discloses that the new mortgage replaced a similar lien of $120,000 on the same property, which consists of a three-story brick building located on a plot 138 by 140 feet, containing thirty-six living apartments, comprising 112 rooms. The building was fully improved.

Whereas it is agreed that for the year in which the mortgage was placed the property was assessed at land, $11,730, and building, $120,000, these figures are not particularly illuminating since the stipulation is silent on the subject of the basis on which assessments were or are made in New Haven. It may or may not be pertinent to note in this connection, however, that the owners, in their loan application, valued the premises at $21,000 for the land and $185,000 for the building, giving a total of $206,000. In any event, the trustee caused an appraisal of the property to be made by two individuals, one of whom was " a builder and appraiser and was familiar with real estate values in the City of New Haven," and the other, as required by Connecticut law, a director of the trust company who had " been for many years familiar with the real estate values in the City of New Haven and had acted as appraiser on behalf of " the trust company " in connection with his official duties " therein. Their written report, dated September 23, 1927, fixed the value of the property at $200,000.

On the faith of this appraisal, and in the belief that the property furnished " ample security for a first mortgage loan of $100,000," the mortgage was made. The stipulation of facts further indicates proper subsequent diligence by the trustee in watching " the mortgaged premises and the manner in which the same was operated by the owner."

The subsequent history of the investment duplicates that which has become so familiar regarding similar properties in New York and elsewhere in the dark days beginning in the fall of 1929. It is now in a frozen state, with no market for the participation certificates issued against it and no means of present liquidation of the mortgage as a whole, which is now more than five years overdue.

At the time of the investment of the present trust funds in the participating interest the *cestui que* trust was sixteen years of age and had a duly-appointed general guardian in the person of his mother. It does not appear that she or her ward were advised until April, 1929, of the fact that the funds of the trust had been thus invested, nor is it indicated that either of them ever made any protest on the subject after the pertinent facts were called to their attention.

Although the memorandum filed on behalf of the objecting beneficiary contains some general statements tending to impugn the valuation of the underlying security at the time the mortgage was initially placed and the diligence of the trustee in the handling of the investment, the portions of the stipulation of facts hereinbefore quoted appear completely to negative any basis of objection along such lines, and to leave for determination only two questions, namely, *first*, whether it was an innately improper act for a corporate fiduciary named in the will, permanently domiciled in a foreign State and authorized in the charter of its authority to invest in such securities " as to it shall seem best," to place the funds of the trust in a mortgage on real estate located at the place of its foreign domicile; and, *second*, whether an investment by a foreign corporate fiduciary, thus authorized, in a participation certificate in a mortgage owned by it, was rendered improper, granting it to have been permissible in the first instance by reason of its failure to notify the infant beneficiary or his guardian of the fact thereof for a period of approximately eighteen months after its acquisition.

In approaching the solution of the first propounded problem, it is to be noted that the chief legal reliance of the objector is found in the statement of Judge FINCH in *Ormiston* v. *Olcott* (84 N. Y. 339, 342) to the effect that in the usual case the investments of an executor or testamentary trustee should be limited to securities located in this State. Whereas the actual determination of the decision exonerating the trustee from liability renders the direct authority of the pronouncement potentially vulnerable as at least a *quasi*-dictum, it undoubtedly represents a sound statement of policy *in the usual case*, and has been made the subject of frequent judicial approbation. (*Denton* v. *Sanford*, 103 N. Y. 607, 612; *Matter of Reed*, 45 App. Div. 196, 202; *Matter of Avery*, 45 Misc. 529, 548;

*Matter of Burr*, 48 id. 56, 66; revd. on other grounds, 118 App. Div. 482; *Matter of McDowell*, 97 Misc. 306, 325; revd. on other grounds, 178 App. Div. 243; S. C., 102 Misc. 275, 295; modfd. on other grounds, 184 App. Div. 646; *Matter of Poulson*, DELEHANTY, S., 155 Misc. 625, 627.)

It is to be noted, however, that all of the cases cited, other than *Matter of Reed*, concerned investments by executors or administrators who were acting purely under general rules of law, and in the single case of a trustee the court expressly construed the terms of the will as limiting the fiduciary to legally authorized investments. (*Matter of Reed*, 45 App. Div. 196, 200.) It is further significant that in *Adair* v. *Brimmer* (74 N. Y. 539), in which the issues concerned foreign investment by trustees under a will which accorded them authority to invest in such lands or securities " as they shall deem safe," the court predicated their liability wholly on the demonstrated fact that the investments made were of a speculative and unsafe nature and not at all on the fact that they were not located within the confines of this State.

The basic obligation of all fiduciaries for the exercise of diligence and prudence has been perennially reiterated both before and since the pronouncement in *King* v. *Talbot* (40 N. Y. 76, 85), but in this, as in other respects, the courts have uniformly exhibited a tendency to validate the demonstrated wishes of each particular testator and, within reasonable limits, to exonerate a fiduciary who in good faith exercises accorded powers of investment transcending those which would have been permitted to him had the testamentary instrument been silent on the subject.

Every fiduciary, no matter what discretionary authority may be accorded to him, " is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs " (*King* v. *Talbot*, 40 N. Y. 76, 85), but so long as he complies with this standard of conduct he will not ordinarily be held liable for inadvertent loss so long as he invests the funds in his charge in the manner in which the testator has expressly authorized. The will is his charter of authority in this regard, and courts will no more undertake to rewrite it in this particular than in any other.

In the present instance the testatrix reposed an extremely broad discretionary authority in her trustee, authorizing it to invest the funds " as it shall seem best." This authorization is broad enough to permit investment even in corporate stocks which, if worth while, almost invariably transcend State lines. There is here no semblance of any absence of requisite diligence and prudence,

wherefore, since the fiduciary acted within the letter and spirit of its authority there is no basis for criticism of its act in investing in a Connecticut first mortgage.

One further consideration is worthy of note in this connection. The testatrix deliberately selected a Connecticut fiduciary. Had this trustee invested in a New York mortgage, as the objector with a display of wisdom developed after the event asserts it should have done, it would have been impossible for it to give to the securing property that constant care and supervision which the stipulation of facts specifies that it actually accorded thereto. It is the policy of the law that so far as may be reasonably possible a trustee shall give personal attention to the affairs of the trust. Such attention to New York realty would have been impossible to the chosen fiduciary of this testatrix. It must be accordingly held that, under the peculiar circumstances here disclosed, its act of investment in a mortgage on real estate which it could and did supervise more nearly complied with the spirit of the law than would have been the case had the real estate been located in New York.

There remains for consideration the second contention of the objector to the effect that, even though the investment in the participation certificate might otherwise have been valid, the failure of the trustee for eighteen months to notify the beneficiary or his guardian of its acquisition rendered it improper. This position purports to be predicated upon the provisions of subdivision 7 of section 188 of the Banking Law of the State of New York as existing prior to its amendment by chapter 898 of the Laws of 1936 and its repeal by chapter 619 of the Laws of 1937, and upon the decision of the Appellate Division for the First Department in *Matter of Bearns* (251 App. Div. 222).

This contention is capable of even more ready disposal than that previously considered. The various statutory enactments relative to investments are applicable and effective only in the absence of express testamentary directions or authorizations in this regard. Their purport is merely to exonerate from loss occurring without their fault or neglect fiduciaries who comply with their terms and otherwise exercise reasonable care and prudence. When, however, the testamentary script has established other criteria of propriety in respect to placement of the trust funds, these supersede and supplant the statutory authorizations, and the conduct of the fiduciary is to be evaluated only in accordance with its terms.

The second complete answer to this contention is found in the terms of the cited statute itself. The addition invoked was made to the Banking Law by chapter 385 of the Laws of 1917, and refers and is applicable in terms to " any such corporation." The

addition thus made is to article V of the act which relates to "Trust Companies." That a "trust company" is meant by the designation in the amended section is further demonstrated by the express reference to "any trust company" in the first subdivision of the section. The term "trust company" is expressly defined in section 2 of the Banking Law and is limited to a "domestic corporation." It is accordingly obvious that the provisions of the act do not contemplate, nor in terms apply to, a corporation organized under the laws of a foreign jurisdiction, as is the situation of the present accountant.

It must accordingly be determined that, in view of the fact that this foreign corporation was accorded a discretionary authority of investment of the funds of the present trust, and that no absence of reasonable diligence and prudence on its part in the making or continuance of the investment in question has been demonstrated, that the objections thereto must be overruled.

Enter decree on notice in conformity herewith.