In the Matter of the Accounting of M. FRANCES HEINRICH, as Executrix of LAWRENCE W. HEINRICH, Deceased.

Surrogate's Court, Monroe County, July 28, 1949.

*Harold G. Hutchens* for executrix, petitioner.

*Howard M. Woods* for Central Trust Company of Rochester, as trustee under the will of Lawrence W. Heinrich, deceased, respondent.

*J. Raymond Tobin*, special guardian for L. William Heinrich and others, infants, respondents.

WITMER, S. Construction of the will herein is asked to determine whether or not the executrix as life tenant was entitled to allocate and distribute to herself the sum of $188,677.79 of the proceeds of sale of three blocks of the testator's stock, sold for the total sum of $274,711.39, on the ground that the same constituted income earned by the respective corporations since testator's death, and that only $86,033.60 thereof constituted the original capital value of such stocks at testator's death.

Testator died March 15, 1946, and his will, dated December 7, 1944, was admitted to probate on March 29, 1946, and letters testamentary were then issued to testator's widow. The Central Trust Company was designated in the will as trustee, but in the probate proceedings no steps were taken for the appointment of the trustee. After a lapse of three years, no accounting having been filed and the designated trustee having made inquiry concerning the status of the estate, said trustee applied for

letters of trusteeship herein, and the same were issued to it on April 6, 1949. The trustee then instituted a proceeding for compulsory accounting and construction of the will. The executrix thereupon filed her account and petitioned for its judicial settlement, and the compulsory proceedings were merged therewith.

It appears that the three blocks of stock comprised the principal part of the testator's estate, that the stock of the corporations involved was closely held, the testator owning a substantial amount but not to exceed 50% of the stock in any one, and that the testator had devoted his chief efforts in life to creating and building up the businesses carried on through these corporations. The three corporations are Heinrich Motors, Inc., of Rochester, N. Y., Johnston Chevrolet Company, Inc., of Buffalo, N. Y., and Six Fifty Three Fillmore Ave. Inc.

Testator owned 200 of the 550 shares of the outstanding stock of Heinrich Motors, Inc., most of the remaining shares being held by his relatives. Petitioner sold fifty of those shares to Jonathan Heinrich and surrendered the remaining 150 shares to the corporation, which bought them in. The price paid to petitioner for all of this stock was $900 per share, making a total of $180,000. Petitioner claims, and the State tax deposition confirms, that at testator's death the stock was valued at $45,000. She has distributed to herself the sum of $135,000 of these proceeds as representing income.

Testator owned 210 shares of the 420 outstanding shares of Class B nonvoting stock of the Johnston Chevrolet Company, Inc. The only other stock outstanding was thirty shares of Class A voting stock held as collateral by General Motors Corporation at the time of testator's death. In reality testator was the owner of one half of the equity in these thirty shares. Petitioner sold the 210 shares to Samuel P. Johnston, the owner of the other 210 shares outstanding, for the sum of $54,831. For the purposes of the State tax deposition this stock had been valued at $21,033.60. Out of the sale price petitioner distributed to herself as income the sum of $33,797.40, being the difference between the tax valuation and the amount received upon the sale. It is stated that after testator's death and before the sale aforesaid, this corporation paid a cash dividend of $1,680 to testator's estate. Although the reason for this dividend has not yet been revealed, it would appear that it was done in order to facilitate payment of the obligation to General Motors Corporation which was secured by the pledge of thirty shares of Class

A stock. It is stated that the $1,680 received as dividend was paid to General Motors Corporation. As a result it appears that fifteen shares of said Class A stock were released by General Motors Corporation to this estate. These fifteen shares were also sold by petitioner to Mr. Johnston at the time of the sale above mentioned, petitioner receiving therefor the sum of $3,916.12. She distributed all of these proceeds to herself as income.

Testator owned all of the 200 outstanding shares of stock of Six Fifty Three Fillmore Ave. Inc., subject to an option held by said Mr. Johnston to buy 100 shares thereof at $64.03 per share, the original cost, which option was exercised. The other 100 shares were sold by petitioner to Mr. Johnston for the sum of $29,561.27, he paying $35,964.27 for the 200 shares aforesaid. Of this sum petitioner allocated and distributed to herself as income the sum of $15,964.27.

Respondents contend that petitioner had no right to make such distribution to herself without notice to them and without court authorization, and that under the terms of testator's will petitioner is not entitled to such distribution, but that the amount thereof must be returned to the estate and paid to the trustee for use pursuant to the terms of said trust for the benefit of the petitioner and the remaindermen. In this respect I do not understand that respondents object to petitioner's retention of the sum of $1,680 dividend above referred to, if upon further proceedings in this accounting it appears that such sum was indeed distributed by Johnston Chevrolet Company, Inc., as a dividend to each of the two stockholders and that petitioner then used such dividend so paid to redeem the fifteen shares of stock of said company. If such be the case, petitioner is entitled to reimbursement in that amount.

Aside from a provision in his will in respect of the personal effects, etc., testator devised and bequeathed to respondent trustee all of his estate in trust to pay the net income to his wife, the petitioner herein, for life and to pay to her such sums of principal from time to time as the trustee " in its sole and absolute discretion, may deem necessary  *  *  * ". The rest of the trust is for the benefit of the testator's children, the remaindermen, there being provision for a limited use of principal for their education and support while attending institutions of higher learning, and on the death of petitioner the fund is to be divided into separate trusts for each child, one fourth thereof to be paid to each on his attaining twenty-five

years of age, one fourth at thirty years of age, and the balance at thirty-five years of age, with appropriate additional alternate provisions.

Both sides have placed great reliance upon the powers and limitations thereof as granted to the executrix and the trustee in paragraph "Fourth", which constitutes more than half of this nine-page will, and a few parts of it should be quoted to make this discussion understandable.

"Fourth: During the administration of my estate and of the aforesaid trusts, my said Executrix and Trustee shall have the following powers and authority in addition to the powers and authority given by law to my said Executrix and Trustee.

"1. I hereby authorize and empower my Executrix and Trustee to retain any of my property, either real or personal, in the same form of investment in which it may be at the time of my death, or to sell the same for such prices, at such times and on such terms and conditions as they may deem advisable; * * *. The proceeds of any such property sold by my said Executrix or Trustee, or any property received in exchange therefor, shall be considered as a part of my estate or the trust funds herein set up, as the case may be, and subject to the powers and authority given to my said Executrix and Trustee herein, as though such proceeds or such property had been a part of my original estate or a part of the original trust funds herein set up. * * *

"3. Insofar as permitted by law, stock dividends, rights to subscribe to stock or other rights accruing to my Executrix or Trustee by virtue of the ownership of any securities at any time held by either of them, may be treated either as principal or as income, as my said Executrix or Trustee in their sole discretion may deem most advantageous under the circumstances. * * *

"13. I further authorize and empower my said Executrix and Trustee to determine as to every sum received, and as to all property received, whether the same is principal or income, or what part thereof is principal or income, and as to every expense or disbursement incurred or made by either of them, whether the same shall be borne by the principal or by the income, or in what shares by each; and I direct that the decision of my Executrix and Trustee as to every such matter, shall be final and conclusive, whether any question shall be actually raised for their decision or not.

"15. The powers and authority herein given to my said Executrix and Trustee shall be exercised by my said Executrix while she is acting as such Executrix and shall be exercised by my said Trustee, or its successor, while my said Trustee, or its successor, is acting as such Trustee."

Petitioner argues that the express provisions of the will (par. "Fourth", subds. "13", "15") give her an absolute right to allocate to herself as income the amounts which she has distributed to herself, and that, anyway, apart from the provisions of the will on which she relies, the law entitles her thereto.

The usual rule that the testator's intention controls, if revealed, applies in determining these allocation and apportionment problems. (*Matter of Lloyd,* 292 N. Y. 280, 285; *Equitable Trust Co.* v. *Prentice,* 250 N. Y. 1, 8.) That intention is to be ascertained from the circumstances surrounding the testator at the time of the execution of the will and from what is found within the four corners of the will, including the general plan and scheme thereof. (*Matter of Gary,* 261 N. Y. 244, 249; *Matter of Title Guar. & Trust Co.,* 195 N. Y. 339, 344; *Fell* v. *McCready,* 236 App. Div. 390, 395, affd. 263 N. Y. 602; *Matter of Weil,* 151 Misc. 841, 844, 848, affd. 245 App. Div. 822, affd. 271 N. Y. 608.)

The broad discretion granted to the respective fiduciaries "to determine as to every sum received * * * whether the same is principal or income, or what part thereof is principal or income" must be considered in the light of the problems with which it is recognized fiduciaries are confronted, not the least of which is taxation, and in the light of the testator's general testamentary plan. The provision does not authorize an arbitrary determination detrimental to the plan and intention of the testator, but only the exercise of reasonable judgment within the scope of such plan and intention. (*Matter of Clark,* 275 N. Y. 1; *Matter of Matthews,* 255 App. Div. 80, 84, affd. 279 N. Y. 732; *Matter of Talbot,* 170 Misc. 138, 143, 144.) In a related situation the Legislature has declared that it is against public policy for a testator to grant "The power to make a binding and conclusive fixation of the value of any asset for purposes of distribution, allocation or otherwise." (Decedent Estate Law, § 125, subd. 2.) It is not to be assumed that the testator meant to violate any provision of law.

In subdivision "3" of paragraph "Fourth" of his will, quoted (*supra*), testator indicated the extent and purpose of this

discretionary power granted to his fiduciaries, through the use of the words " as my said Executrix * * * may deem *most advantageous under the circumstances.*" (Italics supplied.) Obviously, testator meant most *advantageous to his estate,* not to the fiduciary. The action of the petitioner herein must be held to have been arbitrary, contrary to the intention and will of the testator and in derogation of her fiduciary duty as executrix.

A fiduciary has a duty of equal loyalty to all beneficiaries. Here, without notice to the remaindermen and without application to the court, the executrix has distributed to herself absolutely as life beneficiary the greater part of the estate assets derived from the testator's stock holdings which he gave to the trustee. Indeed, since a testamentary trust is indestructible (*Matter of Wentworth,* 230 N. Y. 176), even if all of the beneficiaries were adult, competent and agreeable to petitioner's wishes, no lawful distribution of the proceeds of sale of said stock could be made except in accordance with the terms of the trust. But even if petitioner were entitled, as against the trust, to the assets which she has taken, since she is in the dual capacity of fiduciary and beneficiary, it would be improper for her to make the distribution to herself without the consent of all persons interested and without application to the court. In one of his last opinions before retiring from the bench, former Surrogate DELEHANTY said in respect of the duty of a fiduciary:

" Even when there is merely the usual relationship between a fiduciary and the beneficiaries, the fiduciary is under a duty of absolute loyalty to *all* beneficiaries and of fairness and impartiality to *all.* If in dealing with the respective beneficiaries their interests are so conflicting that the fiduciary cannot deal fairly with respect to them, he cannot properly act without applying to the court for instructions. Restatement of the Law of Trusts, § 170-q. * * *

" Where, however, in addition there is such an interrelation between the fiduciary and one beneficiary that there is substantial identity between them, the authorities hold that the standard of conduct of the fiduciary becomes even more exacting. The rules governing the conduct of a trustee are equally applicable to an executor under such circumstances." (*Matter of James,* 86 N. Y. S. 2d, 78, 89.)

Respondents urge that the last sentence of subdivision " 1 " of paragraph " Fourth " of the will, quoted above, in and of itself expresses testator's intention that the proceeds of the

sale of the stocks in question " shall be considered as a part of my estate or the trust funds herein set up  *  *  *  as though such proceeds  *  *  *  had been a part of my original estate or  *  *  *  trust funds herein set up." Petitioner argues that the clause therein, to wit, " subject to the powers and authority given to my said Executrix and Trustee herein " negates the force of this argument. I disagree. I think it may be said, however, that since the sentence in question refers to the proceeds of property " sold ", the language must be construed to include liquidation, or respondents' argument begs the question. We are not here dealing with the question of law as to whether the proceeds of stock, liquidated as in this case, are subject to apportionment under the rule of *Matter of Schaefer* (178 App. Div. 117, affd. 222 N. Y. 533). For the moment we are concerned with the construction of the will to ascertain testator's intention. The sentence above referred to, when read in connection with the importance to the testator, at the date of the will, of his stock holdings in the scheme of his will, must be construed to encompass the proceeds of sale or liquidation, and this, certainly, if accomplished during the administration of the estate before the trust is set up. The testator carefully provided that no distribution of principal be made to his widow except in the sole discretion of the trustee. It would be sheer mockery of the testator's intention and will plan for the court here to sanction the substantial distribution of the trust funds which the petitioner has endeavored to make. It is clear that the proceeds in question are a part of the corpus of the estate.

Petitioner has argued that the executrix would violate the provisions of law forbidding accumulation of income if she did not make the distribution as she has done. That argument was made and disposed of in the negative with respect to stock dividends which were declared to be capital instead of income. (*Equitable Trust Co.* v. *Prentice,* 250 N. Y. 1, *supra.*) Certainly, the same principle must be held to apply with respect to assets of a corporation as to which the directors have taken no dividend action.

It is held, therefore, that under the terms of testator's will the proceeds of the sales herein are a part of the corpus of the estate and must be accounted for to the respondents.

Even if the will were not construed to express such intention, petitioner has improperly made distribution to herself without approval of the court. Under the rule of the *Schaefer* case (*supra*) out of the proceeds of liquidation of stock there must

be allocated to the remaindermen the true value of the stock, including undivided earnings, at testator's death, and to the life beneficiary the net income earned by the corporation after the testator's death or the establishment of the trust. As above noted the discretionary power granted to petitioner does not relieve her from acting in good faith. No proper appraisal has yet been shown to have been made to establish the true value of the stocks in question as of the date of death for the purposes of apportionment, and hence there is as yet no proper basis for the allocation which petitioner has made. By virtue of the terms of the will, however, it will be unnecessary to make an appraisal or to allocate and apportion the proceeds of the stock.

In connection with the rule of the *Schaefer* case it is to be observed that only once since the Court of Appeals in 1917 approved the decision of the Appellate Division therein, has the Court of Appeals ever cited the case, and that was the next year in *United States Trust Co.* v. *Heye* (224 N. Y. 242, 254). In 1935 the Restatement of the Law of Trusts (§ 236) adopted the rule of the *Schaefer* case, sometimes referred to as the Pennsylvania rule. Last year, however, the American Law Institute reconsidered this question and in the interest of bringing some order out of the confusion that exists in this matter, amended section 236 to conform to the so-called Massachusetts rule. The pertinent portion of the amendment reads as follows: (Restatement, 1948 Supp., Trusts, § 236, subds. [e] and [f]):

" Except as otherwise provided by the terms of the trust, if shares of stock of a corporation are held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary,  *  *  *

" (e) upon the total or partial liquidation of the corporation during the period, amounts paid as cash dividends declared before such liquidation occurred or as arrears of preferred or guaranteed dividends are income; all other amounts paid upon corporate shares on disbursement of the corporate assets to the shareholders are principal;

" (f) the earnings of a corporation not distributed by the corporation as dividends are principal ".

The New York Legislature has not acted in this matter, as have the Legislatures of some States. (See Restatement, 1948 Supp., Trusts, § 236, Notes, pp. 941–942.) As the law stands in New York under the rule of the *Schaefer* case, an accounting trustee must ascertain and prove in court the financial status of every corporation in which the trustee held stock that has

been liquidated, and the language in some cases goes so far as to include stock sold by the estate or fund to other stockholders (*Matter of Kreitner,* 187 Misc. 747), and even other persons. Much costly litigation could be averted by appropriate action of the New York Legislature in this regard, similar to its action when it enacted section 17-a of the Personal Property Law with respect to stock dividends. Though fortified by the Restatement of the Law, it ill becomes a lower court to render a ruling contrary to the decisions of the Court of Appeals. It is hoped that the matter will receive the early attention of the New York Legislature. However, since the will herein shows testator's intention, it is unnecessary to apply the rule of the *Schaefer* case, which only comes into operation in the absence of expressed intent.

Submit decree in accordance herewith.