**UNITED STATES of America,**
**Appellant,**

v.

**The COMMERCIAL NATIONAL BANK OF KANSAS CITY and the Boatmen's National Bank of St. Louis, Appellees.**

**No. 9741.**

United States Court of Appeals
Tenth Circuit.

May 29, 1968.

Certiorari Denied Dec. 16, 1968.

See 89 S.Ct. 487.

Bennet N. Hollander, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Louis M. Kauder, Attys., Dept. of Justice, and Newell A. George, U. S. Atty., with him on the brief) for appellant.

James J. Melching, Kansas City, Mo., for appellees.

Before MURRAH, Chief Judge, MARVIN JONES*, Senior Judge, United States Court of Claims, and BREITENSTEIN, Circuit Judge.

MARVIN JONES, Senior Judge:

On June 19, 1954, decedent Frank E. Washburn had executed a revocable trust under which the income was to be paid to himself during his lifetime, thereafter to his wife Lucy Tullock Washburn if she survived him, or to his sister if she survived him and his wife. Upon the death of the last income beneficiary, the trust estate was to be terminated and the principal distributed evenly among two charitable organizations and four of decedent's nephews.

Paragraph 5 of the trust empowered the trustee to invade the principal for the benefit of decedent's wife. Because the meaning of this paragraph is crucial to the decision of this case, we quote it in full:

> 5. In the event that the Grantor's wife, Lucy Tullock Washburn, shall survive the Grantor, and the Trust

---

* Sitting by designation of the Chief Justice.

Estate hereby created shall not have theretofore been terminated, then in that event, if at any time or times during the lifetime of the Grantor's said wife, some emergency or contingency shall arise making it necessary or advisable in the sole judgment of the Trustee to pay or distribute to or apply for the benefit of the Grantor's said wife for her comfort, welfare, contentment and happiness, a portion or portions of the principal of said Trust Estate, the Trustee shall have full power and authority to pay or distribute to her, or to use or apply for her benefit for her comfort, welfore, contentment and happiness, such portion of the principal of said Trust Estate as the Trustee in its sole discretion shall deem necessary or advisable in all of the circumstances then existing. In determining the necessity or advisability of making such payments or distributions out of principal to the Grantor's said wife from the Trust Estate, the Trustee may take into consideration other income and cash resources available to the Grantor's said wife, and the Trustee shall take into consideration that said Trust Estate is created by the Grantor for the purpose and with the intention of providing for the comfort, welfare, contentment and happiness of the Grantor's said wife throughout her entire lifetime, and in order that she may continue to live in the manner in which she has been accustomed to live; and that while said Trust Estate should not be depleted by payments or distributions from principal to the extent that the carrying out of said purposes and intentions will be endangered so long as the Grantor's said wife shall live, her enjoyment of the benefits of said Trust Estate should be considered as paramount to the conserving of assets in said Trust

Estate for the benefit of the distributees hereinafter named in paragraph 9 of this Trust Agreement.

A federal estate tax return was filed on behalf of decedent's estate on June 25, 1958, in which taxpayer[1] attempted to deduct from the gross estate the value of the charitable remainders under Int. Rev.Code of 1954, § 2055(a) (2). Upon an audit of this return, the charitable deductions were disallowed on the ground that Paragraph 5 of the trust does not provide an ascertainable standard for the invasion of the trust principal. Taxpayer paid the deficiency[2] and filed a claim for refund, which was denied. Taxpayer then brought this suit for refund under 28 U.S.C. § 1346(a) (1) in the United States District Court for the District of Kansas. The district court granted taxpayer's motion for summary judgment, Commercial National Bank v. United States, 265 F.Supp. 806 (D.Kan.1966), and the government has appealed.

Int.Rev.Code of 1954, § 2055(a) (2) allows a deduction from a decedent's gross estate in the amount of transfers to charitable organizations. Treas.Reg. § 20.2055–2(a) covers situations where the charitable transfer consists of a remainder interest with the intervening life estate belonging to a noncharitable beneficiary. This regulation states that a "deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. * * * Thus, if money or property is placed in trust to pay the income to an individual during his life * * * and then to pay the principal to a charitable organization, the present value of the remainder is deductible." Where a trustee has a power to divert the principal to a noncharitable use, "the deduction will be limited to that portion, if any, of the prop-

---

1. The Boatmen's National Bank of St. Louis, trustee, and the Commercial National Bank of Kansas City, administrator of decedent's will, are herein referred to collectively as "taxpayer."

2. The deficiency was based on several other issues in addition to the disallowance of the charitable deductions, but only the latter issue is before us.

erty or fund which is exempt from an exercise of the power." Treas.Reg. § 20.2055–2(b).

Two Supreme Court cases have established what have become traditional rules of thumb in applying Section 2055 and its regulations to specific instruments. In Ithaca Trust Company v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), the trust allowed the life beneficiary to withdraw from the principal any amount "that may be necessary to suitably maintain her in as much comfort as she now enjoys." Justice Holmes, in allowing a charitable deduction, remarked that "the standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator * * * was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs." 279 U.S. at 154, 49 S.Ct. at 291.

The second Supreme Court case, Merchants National Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943), involved a trust in which the grantor authorized the trustee to invade corpus "for the comfort, support, maintenance, and/or happiness" of his wife. The grantor stated further that "it is. my wish * * * that * * * my said Trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust." The Court denied the charitable deduction, stating that "the extent to which the principal might be used was not restricted by a fixed standard based on the widow's prior way of life. Compare Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647. Here, for example, her 'happiness' was among the factors to be considered by the trustee." 320 U.S. at 261, 64 S.Ct. at 111. The Court was willing to assume the unlikelihood of invasion. Nevertheless,

* * * Congress has required a more reliable measure of possible expenditures and present value than is now available for computing what the charity will receive. The salient fact is that the purposes for which the widow could, and might wish to have the funds spent do not lend themselves to reliable prediction. This is not a "standard fixed in fact and capable of being stated in definite terms of money." Cf. Ithaca Trust Co. v. United States, supra. Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial. [320 U.S. at 262–263, 64 S.Ct. at 112.]

 From these Supreme Court pronouncements there have been distilled generally accepted principles. For a charitable remainder subject to invasion to be deductible, it must first be established that the instrument contains an ascertainable standard of invasion, i. e., one which is capable of being stated in definite terms of money. In all cases allowing the deduction, this ascertainable standard has been the standard-of-living criterion, either expressly stated or implied from the language of the instrument. If no such standard exists, the charitable deduction is denied, no matter how remote the possibility of invasion might be. If the instrument contains such a standard, then the court will determine the likelihood of invasion. See e. g., Salisbury v. United States, 377 F.2d 700, 703 (2d Cir. 1967); Rev. Rul. 54–285, 1954–2 Cum.Bull. 302; Taggart, Charitable Deductions for Transfers of Remainder Interests Subject to Invasion, 21 Tax L.Rev. 535, 562 (1966); Albert, Merchants National Bank v. Commissioner and its Uncharitable Aftermath, 67 Dick.L.Rev. 145, 148 (1963).

In determining whether an ascertainable standard exists, we must interpret the instrument's language in conformity with state law. See Blodget v. Delaney, 201 F.2d 589 (1st Cir. 1953). Thus our problem may be stated as whether, under the law of Kansas, Paragraph 5 of the trust limits the invasion of principal to the standard-of-living criterion.

Similar problems under section 2055 and its predecessor have often been resolved by deciding whether the language of the instrument in question more nearly resembled that in *Ithaca* or *Merchants Bank*. Paragraph 5 of the trust before us contains language similar to the invasion-of-principal clauses in both *Ithaca* and *Merchants Bank*. It resembles *Merchants Bank* in two respects. First, principal may be invaded for the "comfort, welfare, contentment and happiness" of grantor's wife. The phrase in *Merchants Bank* was "comfort, support, maintenance, and/or happiness." Secondly, the trustee in the case before us is admonished that

> while said Trust Estate should not be depleted by payments or distributions from principal to the extent that the carrying out of said purposes and intentions will be endangered so long as the Grantor's said wife shall live, her enjoyment of the benefits of said Trust Estate should be considered as paramount to the conserving of assets in said Trust Estate for the benefit of the distributees * * *.

In *Merchants Bank* the admonitory clause stated that the trustee should "exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust."

The following language of Paragraph 5 resembles the trust in *Ithaca*:

> In determining the necessity or advisability of making such payments or distributions out of principal * * * the Trustee shall take into consideration that said Trust Estate is created by the Grantor for the purpose and

with the intention of providing for the comfort, welfare, contentment and happiness of the Grantor's said wife throughout her entire lifetime, and in order that she may continue to live in the manner in which she has been accustomed to live * * *.

The trust in *Ithaca* allowed withdrawal of such sums as "may be necessary to suitably maintain her in as much comfort as she now enjoys."

The government argues that because principal may be invaded for the "happiness" of the life beneficiary and because the trustee is admonished that the life beneficiary's "enjoyment of the benefits of the said trust estate shall be considered as paramount to the conserving of assets * * * for the benefit of the distributees," the standard of invasion falls within the rule of *Merchants Bank* as being to indefinite. The government recognizes that the standard-of-living clause meets the requirement for definiteness, but argues that where an instrument contains both a broad and a narrow standard of invasion, the instrument must be treated as permitting invasion to the extent of the broader standard. In other words, the broad or indefinite standard establishes the outermost limit of invasion, not the narrow or definite one. See Union Trust Company v. Tomlinson, 355 F.2d 40 (5th Cir. 1966).

Taxpayer contends that *Merchants Bank* and all the other decisions denying a charitable deduction have involved instruments which contained no standard-of-living clause, and that where such a clause is present, words such as "happiness" are of no importance since they must be interpreted to mean the same thing as the standard-of-living clause.

We do not agree with this argument. It is not true, as taxpayer asserts, that "all of the decisions denying charitable deductions in computing estate tax are those having no standard-of-living clause." Several cases denying the deduction have involved instruments with either an express standard-of-living

clause or language which is commonly construed as establishing a standard-of-living criterion. The fatal defect of those instruments was that they contained, in addition to the definite standard, language which went beyond the permissible limits established by *Ithaca* and *Merchants Bank*.

In Union Trust Company v. Tomlinson, 355 F.2d 40 (5th Cir. 1966), the trust expressly established a standard-of-living test for invasion of principal. The trust went on to say, however, that the trustee should "give sympathetic consideration to any requests that my wife may make from time to time," and the trustee was authorized "to be generous in the exercise of this discretion even though there may be considerable depletion of the Trust Estate." It was held that the latter language made the standard of invasion too indefinite to permit the deduction.

Likewise, in State Street Bank & Trust Company v. United States, 313 F.2d 29 (1st Cir. 1963), the will allowed invasion of principal for the benefit of the widow as the trustees "in their uncontrolled discretion may deem necessary or advisable for her comfortable support and maintenance and for any other reasonable requirement * * *." The court held that "comfortable support and maintenance" established the standard-of-living test, but that "any other reasonable requirement" authorized a higher and immeasurable standard. See also Gammons v. Hassett, 121 F.2d 229 (1st Cir.), cert. denied, 314 U.S. 673, 62 S.Ct. 136, 86 L.Ed. 539 (1941); Marine Trust Company of Western New York v. United States, 247 F.Supp. 278 (W.D. N.Y. 1965); Vaccaro v. United States, 224 F.Supp. 307 (D. Mass. 1963).

█ These authorities support the government's contention that where an instrument contains both a broad and a narrow standard of invasion, the broad standard should be given effect. It seems that to do otherwise would require the court to ignore the broader language.

Taxpayer argues, however, that under Kansas law the word "happiness" does not enlarge the standard-of-living test. Taxpayer relies on one Kansas case to support this proposition, In re Estate of Woods Trust, 181 Kan. 271, 311 P.2d 359 (1957). Paragraph b of the instrument in *Woods* gave the income to testator's wife for life, then stated that

Upon the death of my wife, if my daughter Catherine has survived her, it is my will * * * that if and when my said daughter's personal funds become depleted, from that time on the entire net income from said trust estate be paid to my said daughter * *. [311 P.2d at 364.]

Paragraph d allowed invasion of corpus for the benefit of testator's wife and daughter according to the standard-of-living criterion. In Paragraph e, testator stated that the "essence" of his testament was first to provide for the "comfort and happiness" of his wife and daughter and directed that the funds be applied to that purpose "without stint or quibble."

Testator's daughter, a cotrustee, sought to establish her right to receive the income from the trust after the death of her mother, alleging that her personal funds had become "depleted" within the meaning of Paragraph b. The trial court denied the daughter's claim on the ground that her funds were not sufficiently depleted. The Supreme Court of Kansas reversed on this point. The supreme court stated that in Kansas "the intention of a testator must be determined from the whole will—from the four corners of the instrument." 311 P.2d at 365. From Paragraphs b, d, and e the court determined that testator intended for the daughter to receive income when her funds were so depleted as to prevent her from maintaining the standard of living she had grown accustomed to in testator's lifetime. The daughter's funds were sufficiently depleted to allow her to share in the income. 311 P.2d at 366–367.

*Woods* does offer some support for the proposition that under Kansas law the

word "happiness" does not broaden the standard-of-living test. However, it is far from a direct holding to that effect. The court did not have occasion to pass upon the permissible scope of the power of invasion. The question before it was whether the beneficiary's funds had been sufficiently "depleted" to allow her to receive income from the trust. The court never considered the question of whether she was entitled to funds in excess of those necessary to maintain her standard of living. Only if it had, would the question before us have been decided. In view of the almost unanimous holdings of other courts that "happiness" creates a broader, more subjective test than the standard-of-living clause, we are unable to conclude from *Woods* that Kansas would limit invasion of corpus in the instant case to the standard-of-living criterion.

Taxpayer also relies on United States v. Powell, 307 F.2d 821 (10th Cir. 1962). The trustee in *Powell* was authorized to invade principal "for the maintenance, welfare, comfort or happiness" of the beneficiaries and was admonished that, before principal was invaded, he should "deem that the purpose for which the payments are to be made, justifies the reduction in the principal * * *."

The court found "happiness" to have the same meaning as "welfare" and "comfort," which are commonly construed to impose the standard-of-living test. *Merchants Bank* was distinguished on the ground that there the trustee had been given a broader power of invasion:

> It is clear, we think, that the court accorded such broader connotation to the word "happiness," because of the context in which it was found and, particularly, the instructions to the trustee to exercise its discretion with liberality to the wife and to consider her welfare, comfort and happiness prior to the claims of the residuary beneficiaries. [307 F.2d at 827.]

The instrument in *Powell*, on the contrary, "indicated that the power should be exercised with restraint and only when the purpose justified a reduction of the corpus * * *." 307 F.2d at 828.

We believe that *Powell* is distinguishable from the instant case for the same reason it was distinguished from *Merchants Bank*. The trustee in the instant case was told in the second sentence of Paragraph 5 that the life beneficiary's "enjoyment of the benefits of said Trust Estate should be considered as paramount to the conserving of assets * * for the benefit of the distributees * *." This language is comparable to the admonitory clause in *Merchants Bank* which was used by the *Powell* court to explain the broad interpretation of "happiness" in *Merchants Bank*.

The phrase "said Trust Estate should not be depleted by payments or distributions from principal to the extent that the carrying out of said purposes and intentions will be endangered so long as the Grantor's said wife shall live" does not so restrict the power of invasion as to bring the trust in this case within the scope of *Powell*. The "purposes and intentions" referred to are: "providing for the comfort, welfare, contentment and happiness of the Grantor's said wife throughout her entire lifetime, and in order that she may continue to live in the manner in which she has been accustomed to live * * *." Thus the aforementioned phrase means only that the principal is not to be depleted so rapidly as to exhaust it before the life beneficiary's death, and is not inconsistent with an interpretation of "happiness" in accord with *Merchants Bank* and the vast majority of subsequent cases.

The question we must decide is whether a Kansas court would allow invasion of the trust principal under Paragraph 5 beyond the standard-of-living criterion. Although *Woods* and *Powell* indicate that in Kansas "happiness" is not a magic word compelling the automatic consequence of indefinitely broad powers of invasion, we do not construe Paragraph 5 as limiting the trustee to the standard-of-living criterion.

*Powell* establishes that we are to gather the intent of the testator from the in-

strument as a whole. It is clear that the whole of Paragraph 5, save for the phrase "and in order that she may continue to live in the manner in which she has been accustomed to live," indicates the intent to allow invasion of principal beyond the standard-of-living test. In 1954 when this trust was drafted, *Merchants Bank* had for 11 years been a landmark decision in this area of the law. To all lawyers practicing in the estate tax field, the Supreme Court's interpretation of "happiness" must have been abundantly clear. The consequences of an admonitory clause stating that the life beneficiary's enjoyment was to be "paramount" to the conserving of assets for the remainderman must also have been apparent. *Powell* and *Woods*, the two cases relied upon by taxpayer to show that Kansas would interpret Paragraph 5 as establishing a standard-of-living test, were not decided until after this trust was drafted. The inclusion of the standard-of-living test does not nullify the purport of the entire remainder of Paragraph 5. Its effect is to create a definite, minimum standard of invasion in addition to the indefinite standard established by the rest of the paragraph. Under the reasoning of *Union Trust* and *State Street*, the scope of invasion cannot be limited to the standard-of-living clause. Since the standard of invasion is fatally indefinite, it is unnecessary to inquire into the probability of invasion.

Reversed and remanded.