*Decisions will be entered under Rule 50.*

Estate of Lillie MacMunn Stewart, Deceased, W. Alan Henderson, Executor, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 689–68. Filed August 14, 1969.

*Edwin M. Dotten, Jr.*, for the petitioner.
*Owen A. Knopping*, for the respondent.

#### OPINION

Tannenwald, *Judge:* Respondent determined a deficiency in petitioner's estate tax in the amount of $56,308.82. The sole issue for our determination is whether the remainder interests in two trusts established by the decedent qualify for a charitable deduction pursuant to section 2055[1] because of the investment and management discretion vested in the trustee.

All of the facts are stipulated and are found accordingly.

---

[1] All references, unless otherwise specified, are to the Internal Revenue Code of 1954, as amended.

Petitioner is the executor of the Estate of Lillie MacMunn Stewart, deceased, who died on May 6, 1964. His legal residence at the time of filing the petition herein was Madison, N.J. The estate tax return was filed with the district director of internal revenue, Newark, N.J.

On May 24, 1960, the decedent created two trusts by means of separate agreements which named the Hanover Bank, a trust company and bank organized under the laws of New York, now known as the Manufacturers Hanover Trust Co., as sole trustee.

The trusts provided that the income be paid to the decedent for life, then to her sister, Ethel MacMunn Henderson, for life, and then to her sister's husband, W. Alan Henderson, for life. Upon the death of all the life tenants, the corpus was to be distributed to named charities, which respondent concedes meet the requirements of charitable organizations specified in section 2055 (a) (2).

Both trust agreements are identical, except that paragraph 3 below appears only in the provisions governing trust A, and provide in pertinent part:

3. The trustee may pay or apply to or for the use of the grantor so much of the principal, even to the extent of the whole thereof, that it may in its sole discretion deem to be necessary or desirable for her support, care, comfort, and well-being.

4. The trustee shall have the following powers, authority, and discretion, which it may exercise in its sole and absolute discretion whenever and as often as it may deem advisable without application to or approval by any Court, namely:

To retain any property herewith or hereafter placed in trust, and to receive, invest in and retain stocks (whether common or preferred), bonds, securities, undivided interests in any real and personal property, shares or interests in investment companies or investment trusts, any Common Trust Fund maintained by the corporate trustee, and any property, real or personal, foreign or domestic, whether or not wasting assets, without any duty to diversify and without any restriction placed upon fiduciaries by any present or future applicable law, rule of court or court decision, and from time to time to hold property uninvested without liability for interest or loss of income.

\*          \*          \*          \*          \*          \*          \*

To apportion to principal or to income or in part to both any rents, dividends, interest or other income accrued or declared, but unpaid, in respect of any property at the time of the receipt of such property by the trustee, any dividend of whatever kind or nature, any property received upon any exchange, reorganization, recapitalization, consolidation, merger or dissolution, any rents, royalty or payment received in respect of any so-called "Wasting asset" or so-called "unproductive property" or any other receipt whatsoever, to determine whether or to amortize in whole or in part the premium at which any property may be received or held or any depreciation on or any expense in connection with any property, real or personal, to discontinue any sinking fund or depreciation or depletion reserve and to treat the same as income in whole or in part and to pay from principal or income or in part from both any deficit from the operation of any improved or unimproved property or any charge against the trust estate, to distribute property determined to be income and to hold property determined to be principal without liability to any person then or thereafter interested in

the trust estate, upon the termination of any trust to pay any accrued rents, dividends, interest or other income, to the next estate without apportionment and in connection with the foregoing to follow or depart, in whole or in part, from any rule of law; provided that nothing herein shall authorize an illegal accumulation of income.

In all matters to administer and invest the trust estate as fully and freely as an individual owner might do, without any restrictions to which fiduciaries are ordinarily subject, except the duty to act in good faith and with reasonable care.

\* \* \* \* \* \* \*

12. This indenture shall be construed, regulated, and administered in all respects in accordance with the laws of the State of New York, except as otherwise herein expressly provided.

At all times between the date the trusts were established and the date of death, the assets of both trusts consisted entirely of small amounts of cash and publicly traded stocks and debt obligations of well-known business corporations and governmental agencies.

Because of the life interest retained by the decedent, it is not disputed that the corpus of each trust was properly includable in the decedent's gross estate under section 2036.

The sole question herein is whether the discretionary authority given the corporate trustee by the governing instruments (i.e., to allocate receipts and expenditures between principal and income and to invest in wasting assets without provision for a reserve or sinking fund) precludes the deductibility under section 2055(a)(2)[2] of the otherwise undisputed value of the remainder interests in favor of concededly charitable organizations. Neither the efforts of the parties nor our own research has disclosed a case in which this precise question has been determined.[3]

Respondent's position is that the discretionary powers thus conferred upon the trustee were totally unrestricted and that, even if local law imposed some limitation on the free exercise of those powers, the applicable standard of conduct was not sufficiently strict and definite. He therefore asserts that they constituted a power of invasion, albeit *indirect*, which could be used to augment the income of the life beneficiaries. Accordingly, respondent concludes that the charitable remainders were not "presently ascertainable and hence severable,"

---

[2] SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.

(a) IN GENERAL.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devices, or transfers \* \* \*

\* \* \* \* \* \* \*

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes \* \* \*

[3] We consider *Colt* v. *Duggan,* 25 F. Supp. 268 (S.D.N.Y. 1938), distinguishable. That case involved an income tax charitable deduction pursuant to secs. 162(a) and 23(n) of the Revenue Act of 1932. In addition to the discretionary powers of allocation, the trustee also had a power directly to invade corpus for the benefit of the noncharitable income beneficiaries. The charitable remainder interests were consequently held nondeductible.

as required by section 20.2055–2(a), Estate Tax Regs., and that the possibility that the charitable transfers would not become effective was not "so remote as to be negligible," as required by section 20.2055–2(b), Estate Tax Regs.[4]

Previous cases have dealt with the impact of discretionary trustee powers of *direct* invasion of trust corpora for the benefit of noncharitable beneficiaries and have seemingly constructed dual and mutually exclusive tests based upon the "presently ascertainable" and "so remote as to be negligible" standards of respondent's regulations. Cf. *Commissioner v. Sternberger's Estate*, 348 U.S. 187 (1955); *Hamilton National Bank of Chattanooga v. United States*, 236 F. Supp. 1005 (E.D. Tenn.), affirmed per curiam 367 F. 2d 554 (C.A. 6, 1966). Compare, e.g., *United States v. Commercial National Bank of Kansas City*, 404 F. 2d 927 (C.A. 10, 1968); *Salisbury v. United States*, 377 F. 2d 700 (C.A. 2, 1967); *Estate of Russell Harrison Varian*, 47 T.C. 34, 48 (1966), affirmed per curiam 396 F. 2d 753 (C.A. 9, 1968). We see no need to delve into the esoterisms involved in drawing distinctions between these two standards. See Taggart, "Charitable Deductions for Transfers of Remainder Interests Subject to Invasion," 21 Tax L. Rev. 535 (1966). As we see it, the critical question is whether the discretionary powers conferred upon the corporate trustee herein constituted a power of *indirect* invasion as respondent contends. If that question is answered in the negative, then it would seem that each standard set forth in respondent's regulations will have been met since, aside from the existence of the discretionary powers, the remainder shares are clearly "ascertainable and hence severable" and the governing instruments create no other potentially impairing contingencies.

Both parties agree that the scope of the discretionary powers herein should be determined under New York law and have cited numerous

---

[4] Sec. 20.2055–2. Transfers not exclusively for charitable purposes.

(a) *Remainders and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest *only insofar as that interest is presently ascertainable, and hence severable* from the noncharitable interest. * * *

(b) *Transfers subject to a condition or a power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable *unless the possibility that the charitable transfer will not become effective is so remote as to be negligible.* If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power. * * *

[Emphasis added.]

decisions of the New York courts to support their positions. Respondent asserts that the broad powers of the trustee are at most subject to judicial interference only in the event of an arbitrary exercise thereof. Petitioner, on the other hand, claims that the trustee would be required both to act in good faith and to exercise reasonable judgment within the scope of the plan and intention of the settlor. We see no useful purpose to be served by a detailed exposition of the New York decisions, since each case dealing with the interpretation of a trustee's powers ultimately turns upon its own particular facts and is therefore distinguishable. We have concluded that petitioner's analysis is the correct one.

It is clear that the grant of discretion to a trustee, however broad, does not "relieve him from obedience to the great principles of equity which are the life of every trust." *Carrier* v. *Carrier*, 226 N.Y. 114, 123 N.E. 135, 138 (1919). Discretionary power given to a trustee to invest in nonlegals must still be exercised prudently. *Matter of Bruen's Estate*, 83 N.Y.S. 2d 197 (N.Y. Co. Surr. Ct. 1948); *Matter of City Bank Farmers Trust Co.*, 189 Misc. 942, 68 N.Y.S. 2d 43 (N.Y. Co. Sup. Ct. 1947); *Matter of Clark's Will*, 165 Misc. 801, 1 N.Y.S. 2d 629 (Kings Co. Surr. Ct. 1938); *Matter of Albro's Will*, 165 Misc. 486, 300 N.Y.S. 1103 (Westchester Co. Surr. Ct. 1937). A trustee has a duty of equal loyalty to all beneficiaries. *Matter of Dickson's Estate*, 38 Misc. 2d 678, 237 N.Y.S. 2d 572 (N.Y. Co. Surr. Ct. 1963); *Matter of Heinrich*, 195 Misc. 803, 90 N.Y.S. 2d 875 (Monroe Co. Surr. Ct. 1949). As the court noted in *Matter of Woodin's Estate*, 118 N.Y.S. 2d 465, 469 (N.Y. Co. Surr. Ct. 1952), in summarizing the duties of a trustee:

> It is beyond dispute that the testamentary trustees owe equal duties to the income beneficiaries and the remaindermen. One obligation to the remaindermen is to safeguard the trust corpus but no obligation is owed to incur speculative risks to increase the corpus. * * * An obligation to the income beneficiaries is to maintain the trust funds in investments that are productive of income.[5]

See also *Blodget* v. *Delaney*, 201 F. 2d 589, 593–594 (C.A. 1, 1953).

The thrust of New York law is further reflected in a statutory provision declaring void any provision exonerating a fiduciary "from liability for failure to exercise reasonable care, diligence, and prudence." See N.Y. Est., Powers & Trust Law, sec. 11–1.7(a)(1) (McKinney 1967), incorporating identical language previously contained in N.Y. Deced. Est. Law, sec. 125 (McKinney 1949).

---

[5] Compare N.Y. Est., Powers & Trust Law, sec. 11–2–1(a) (McKinney), effective Sept. 1, 1967, which states that "A trust shall be administered with due regard to the respective interests of income beneficiaries and remaindermen" and requires that, in situations not covered by the "terms of the trust instrument" or "the provisions of this section," receipts and expenditures shall be allocated "in accordance with what is reasonable and equitable in view of the interests of those entitled to income as well as those entitled to principal and in view of the manner in which men of ordinary prudence, discretion and judgment would act in the management of their own affairs."

The New York cases relied upon by respondent are all distinguishable on their facts. Many of them involved the right of a trustee to invade corpus in light of the demonstrated concern of the settlor for the income beneficiary, a factor not present herein. The emphasis in some of the opinions upon a standard of arbitrariness as the measure of a trustee's responsibility occurred in the context of factual situations where the trustee was held liable for having acted arbitrarily, and thus was directed toward the negative proposition of imposing an outer limit of responsibility rather than a positive standard of conduct. The decedent herein provided, in one of the trust instruments, that the trustee might, during the term of her reserved life estate, invade the whole of the corpus for her "support, care, comfort and well being." No such provision appears in the other trust instrument, in which the decedent also reserved a life estate. Nor does any such provision appear for the benefit of decedent's sister and brother-in-law, who became the income beneficiaries at decedent's death. Such a clear indication of the decedent's knowledge and use of a power of direct invasion bears heavily against interpreting discretionary powers of administration in the trustee as creating a power of indirect invasion for the benefit of the income beneficiaries, especially since there is no indication whatsoever of any intent on the part of the decedent to favor such beneficiaries at the expense of the charitable remaindermen.

We think it also significant that, at all times between the establishment of the trusts and the decedent's death, the assets of the trusts consisted entirely of small amounts of cash and publicly traded stocks and debt obligations of well-known business corporations and governmental agencies. Thus, we need not concern ourselves with situations where at the date of death there was an actual or indicated pattern of investment in wasting assets or securities involving capital gains distributions (e.g., regulated investment companies) and we specifically abjure expressing any opinion in respect thereto. Compare Rev. Rul. 67–33, 1967–1 C.B. 62, supplementing Rev. Rul. 60–385, 1960–2 C.B. 77; Rev. Rul. 60–162, 1960–1 C.B. 376.[6]

Finally, we note that an independent third party, i.e., a bank, was named sole trustee and that the governing instruments herein expressly imposed upon the trustee a "duty to act in good faith and with reasonable care." The presence or absence of such a provision has been a critical factor in determining whether a trust in which the decedent-

[6] We note also that Rev. Rul. 65–144, 1965–1 C.B. 442, indicates, without discussion, that a general power to apportion receipts between income and principal precludes a deduction for a charitable remainder under sec. 25.2522(a)–2, Gift Tax Regs., the provisions of which are substantially identical to those contained in sec. 20.2055–2, Estate Tax Regs., involved herein. Aside from the fact that such ruling is not binding upon us, the ruling essentially turned on a holding that a conditional power of revocation was against public policy and that therefore the imposition of the gift tax could not be avoided. See Taggart, "Charitable Deductions for Transfers of Remainder Interests Subject to Invasion," 21 Tax L. Rev. 535, 571, fn. 65 (1966).

settlor-trustee has broad discretionary powers should be included in the gross estate under section 2036 or section 2038. Compare *Estate of Ralph Budd*, 49 T.C. 468, 475–476 (1968), and *Estate of Marvin L. Pardee*, 49 T.C. 140, 146–147 (1967), in which *State Street Trust Co.* v. *United States*, 263 F. 2d 635 (C.A. 1, 1959), heavily relied upon by respondent herein, is distinguished. We recognize that the comparability of trust powers may differ for the purposes of sections 2036 or 2038 as opposed to section 2055, but the thrust of the foregoing decisions is not without significance in arriving at a decision herein.

It cannot be gainsaid that in theory the trustee herein might use its discretionary powers to allocate to income amounts that might, as an a priori matter, be technically allocable to corpus, and thereby impair the charitable remainders. But such theoretical possibility is not determinative. As Mr. Justice Holmes observed in *Ithaca Trust Co.* v. *United States*, 279 U.S. 151 (1929), which held that the possibility of exercise of a power of invasion in favor of an income beneficiary did not preclude the deduction of a charitable remainder for estate tax purposes, "there was no uncertainty appreciably greater than the general uncertainty that attends human affairs." See 279 U.S. at 154. We think that the same principle applies to the instant case. All trusts are subject to the vicissitudes of the economy as well as depletion through unwise, if not imprudent or unreasonable, decisions on the part of the trustees. As a consequence, a comparison of the present remainder interests with those of a trust where the trustee does not have such discretionary powers is not one of uncertainty versus certainty, but rather a comparison between degrees of uncertainty.

Cases of this type inevitably involve the difficult task of line drawing—a task which requires the placing of a particular case on one side of the line or the other, based upon an analysis of all the facts. See *United States* v. *Dean*, 224 F. 2d 26, 29 (C.A. 1, 1955) ; *Estate of Mary Cotton Wood*, 39 T.C. 919, 924 (1963).

Under all the circumstances herein, we think there was no more likelihood that the corporate trustee would or could, in light of New York law, utilize its discretionary powers as a substitute power of invasion for the benefit of the income beneficiaries than there would be in a situation where such provisions were not included in the governing instruments. Cf. *William T. Grant*, 48 T.C. 606, 629 (1967). Compare Rev. Rul. 69–344, 1969–1 C.B. 225, and Rev. Rul. 66–39, 1966–1 C.B. 223, where respondent seems to adopt a more liberal approach than the one advocated by him herein. To hold otherwise would be to turn what are commonplace trust powers intended simply to provide administrative flexibility into a substantive grant of dispositive flexibility. Compare *In Re Arens*, 41 N.J. 364, 197 A. 2d 1 (1963) ; see

Scott, "Principal or Income?," 100 Trust & Estates 180, 251 (1961); note, 61 Northw. U. L. Rev. 640, 644–650 (1966). This we are not prepared to do.

We conclude, and we so find, that the charitable remainders were "presently ascertainable" and that the possibility that they would not take effect was "so remote as to be negligible." The claimed deduction should be allowed under section 2055.

To reflect the other agreements of the parties,

*Decision will be entered under Rule 50.*

Reviewed by the Court.